1    ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
     Roman M. Silberfeld, Bar No. 62783
2    RMSilberfeld@rkmc.com
     David Martinez, Bar No. 193183
3    DMartinez@rkmc.com
     2049 Century Park East, Suite 3400
4    Los Angeles, CA 90067-3208
     Telephone:    310-552-0130
5    Facsimile:    310-229-5800

6    ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
     Laura E. Nelson, Bar No. 231856
7    LENelson@rkmc.com
     800 LaSalle Avenue
8    2800 LaSalle Plaza
     Minneapolis, MN 55402
9    Telephone:    612-349-8500
     Facsimile:    612-339-4181
10
     *Attorneys For Plaintiffs Best Buy Co., Inc.; Best Buy*
11   *Purchasing LLC; Best Buy Enterprise Services, Inc.;*
     *Best Buy Stores, L.P.; Bestbuy.com, L.L.C.; and*
12   *Magnolia Hi-Fi, Inc.*

13   **[Additional Counsel Listed On Signature Page]**

14                    UNITED STATES DISTRICT COURT

15                    NORTHERN DISTRICT OF CALIFORNIA

16                        SAN FRANCISCO DIVISION

17
     IN RE TFT-LCD (FLAT PANEL)            Master File No. 07-MD-1827 SI
18   ANTITRUST LITIGATION                  MDL No. 1827

19                                         Individual Cases:
     This Documents Relates To:            Case No. 10-CV-4572
20                                         Case No. 12-CV-4114
     *Best Buy v. AU Optronics Corp. et al,*  Case No. 10-CV-5452
21   Case No. 10-CV-4572,                  Case No. 10-CV-4945

22   *Best Buy v. Toshiba Corp. et al,*     **NOTICE OF MOTIONS AND MOTIONS**
     Case No. 12-CV-4114                    ***IN LIMINE* (NOS. 1 - 21)**

23                                          **[Declaration of Astor H.L. Heaven filed**
     *Eastman Kodak Company v. Epson Imaging*  **concurrently herewith.]**
24   *Devices Corp. et al.,*
     Case No. 10-CV-5452                    **(Motion Nos. 22 and 23 filed separately)**

25   *Target Corp., et. al., v. AU Optronics Corp. et*  Date:    July 9, 2013
26   *al.,*                                 Time:    3:30 p.m.
     Case No. 10-CV-4945                    Ctrm:    10, 19th Floor

27
                                           **The Honorable Susan Y. Illston**
28

# TABLE OF CONTENTS

Page

I.  INTRODUCTION .......................................................................................... 1

II. LEGAL ARGUMENT ..................................................................................... 2

    A.   MOTIONS IN LIMINE ON ISSUES THAT HAVE NOT BEEN
        SPECIFICALLY RULED UPON BY THE COURT ......................................... 2

          1.   Motion to Exclude Evidence of Unrelated Litigation ................................ 2

          2.   Motion to Exclude Reference and Argument of Plaintiffs'
             Purported "Market Power." ....................................................................... 5

          3.   Motion to Exclude Evidence or Argument that the Indirect Purchase
             Plaintiff Class Has Settled or Been Made Whole ...................................... 6

          4.   Motion to Exclude Evidence or Argument That Toshiba's Products
             Sold to Plaintiffs Did Not Contain Toshiba Panels ................................... 7

          5.   Motion to Exclude Arguments or Evidence That Best Buy Engaged
             in Communications With Competitors ....................................................... 9

          6.   Motion to Exclude References or Arguments Regarding Special
             Master Quinn's Order Striking Professor David Stowell's Rebuttal
             Opinions ................................................................................................ 10

          7.   Motion to Admit Corporate Disclosure Statements Filed in Non-
             related Cases Pursuant to Rule 807 .......................................................... 11

          8.   Motion to Exclude Evidence, Reference or Argument Regarding
             Eric Korman and Dell's Alleged Knowledge of Defendants'
             Conspiracy ............................................................................................. 14

          9.   Motion to Exclude Evidence Related to Best Buy's Alleged
             Knowledge of The Conspiracy from Use Against Kodak and The
             Target Plaintiffs .................................................................................... 17

    B.   MOTIONS IN LIMINE PREVIOUSLY GRANTED BY THE COURT ............ 18

         10.   Motion to Exclude References to, And Evidence of the Ability of
            Plaintiffs to Seek Treble Damages And Attorneys' Fees And Costs ........ 18

         11.   Motion to Exclude References or Arguments Regarding Other
            Actions and Settlements in this MDL ...................................................... 20

         12.   Motion to Exclude References to the Financial Condition of Any of
            the Named Plaintiffs .............................................................................. 24

         13.   Motion to Exclude References to Statements Made by Department
            of Justice Officials Regarding Multiple Conspiracies ............................. 24

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

Plaintiffs' Motions *In Limine* (Nos. 1 - 21)           Master File No. M07-1827 SI
Individual Files 10-CV-4572; 10-CV-5452; 10-CV-4945; 12-CV-4114

i

14.    Motion to Exclude Any Reference to The Department of Justice's Rule 12.4 Disclosures in The Related Criminal Actions ........................ 25

15.    Motion to Preclude Argument That Plaintiffs' Claims Are Barred Because They Arise from Foreign Commerce ........................................... 27

16.    Motion to Preclude Evidence Regarding "Pass-On" in Connection with Best Buy's and The Target Plaintiffs' Claims ................................. 27

17.    Motion to Exclude Evidence Regarding Plaintiffs' Alleged Failure to Mitigate Their Damages ........................................................ 29

18.    Motion to Exclude Live Witnesses from Testifying in Defendants' Case-In-Chief Who Were Not Made Available for Live Testimony in Plaintiffs' Case-In-Chief ................................................................. 30

19.    Motion to Exclude Percipient Witnesses, Except for A Party Representative, from The Courtroom Unless Testifying ....................... 32

20.    Motion to Preclude Expert Witness Testimony on Incomplete Pass-On of Overcharges Through Affiliate Entities (Royal Printing) .............. 32

C.    MOTIONS IN LIMINE PREVIOUSLY DENIED BY THE COURT ................. 34

21.    Motion to Admit Evidence That Witnesses Have Invoked The Fifth Amendment Privilege Against Self-Incrimination................................... 34

D.    MOTIONS IN LIMINE TO BE SEPARATELY FILED ON BEHALF OF THE PLAINTIFFS ......................................................................... 37

22.    Plaintiffs' Notice of Motion and Motion for Pre-Trial Ruling on the Admissibility of Documents ...................................................... 37

23.    Plaintiffs' Notice of Motion and Motion for Pre-Trial Ruling on Summary Witness Testimony Reflecting Conspiracy Meetings and Communications ......................................................................... 37

III.    CONCLUSION ............................................................................ 37

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

**Cases**

*Acands, Inc. v. AON Risk Services*,
   2004 WL 2601035 (E.D. Pa. Nov. 10, 2004).......................................................... 22

*ADC Telecomm, Inc. v. Switchcraft, Inc.*,
   2007 WL 6347404 (D. Minn. Jan. 8, 2007) ......................................................... 31

*A.I. Trade Fin., Inc. v. Centro Internationale Handelsbank AG*,
   926 F. Supp. 378 (S.D.N.Y. 1996), ................................................................... 12

*Albach v. Hess*,
   2006 U.S. Dist. LEXIS 33911 (N.D. Ohio May 26, 2006)...................................... 4

*Alvarado v. FedEx Corp.*,
   2009 W.L. 734683 (N.D. Cal. Mar. 19, 2009) ................................................... 12

*Amini Innovation Corp. v. JS Imports, Inc.*,
   497 F. Supp.2d 1093 (C.D. Cal. 2007) ............................................................... 32

*Apple iPod iTunes Antitrust Litig.*,
   2011 WL 5864036 (N.D. Cal. Nov. 22, 2011) ................................................... 29

*Applied Elastomerics, Inc. v. Z-Man Fishing Products, Inc.*,
   2006 WL 2868971 (N.D. Cal. Oct. 6) ................................................................. 32

*AT&T Mobility LLC v. AU Optronics Corp.*
   (*In re TFT-LCD (Flat Panel) Antitrust Litig.*), 2010 U.S. DIST. LEXIS 72426
   (N.D. Cal. July 19, 2010) ..................................................................................... 7

*Baxter v. Palmigiano*,
   425 U.S. 308 (1976).............................................................................................. 35

*Black v. Ryder/P.I.E. Nationwide, Inc.*,
   15 F.3d 573 (6th Cir. 1994).................................................................................. 27

*Blancha v. Raymark Inds.*,
   972 F.2d 507 (3d Cir. 1992)................................................................................... 3

*Blue Cross & Blue Shield of N.J., Inc., v. Philip Morris, Inc.*,
   2000 WL 1805359 (E.D.N.Y. Dec. 11, 2000) .................................................... 22

*Braintree Labs. v. McKesson Corp.*,
   2011 WL 5025096 (N.D. Cal. Oct. 20, 2011)..................................................... 29

*Brinks, Inc. v. New York*,
   717 F.2d 700 (2d. Cir. 1983)................................................................................ 35

*Brooks v. Cook*,
   938 F.2d 1048 (9th Cir. 1991).............................................................................. 19

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

*Buonanoma v. Sierra Pac. Power Co.*,
  2010 U.S. Dist. LEXIS 105300 (D. Nev. Sept. 16, 2010) .......................... 4

*Carrier Corp. v. Outokumpu Oyj*,
  Nos. 07-6052, 07-6114, 2012 WL 678151 (6th Cir. March 2, 2012) ...................... 27

*Chrysler Corp. v. General Motors Corp.*,
  596 F. Supp. 416 (D. D.C. 1984) .......................... 9

*Contemporary Mission, Inc. v. Bonded Mailings, Inc.*,
  671 F.2d 81 (2d Cir. 1982) .......................... 21

*Copperweld Corp. v. Independence Tube Corp.*,
  467 U.S. 752 (1984) .......................... 9

*Crane v. Int'l Paper Co.*,
  2005 U.S. Dist. LEXIS 15590 (D. S.C. April 19, 2005) .......................... 7

*Doan v. Astrue*,
  2008 WL 238454 (S.D. Cal. Jan. 29, 2008) .......................... 32

*Doe by & Through Rudy Glanzer v. Glanzer*,
  232 F.3d 1258 (9th Cir. 2000) .......................... 36

*Duran v. City of Maywood*,
  221 F.3d 1127 (9th Cir. 2000) .......................... 3

*Eastman Kodak Co. v. Image Tech. Servs.*,
  504 U.S. 451 (1992) .......................... 5

*Eccleston v. New York City Health & Hosps. Corp.*,
  698 N.Y.S.2d 869 (1998) .......................... 6

*Eichel v. N.Y. Central R.R.*,
  375 U.S. 253 (1963) .......................... 22

*Eolas Technologies, Inc. v. Microsoft Corp.*,
  270 F. Supp.2d 997 (N.D. Ill. 2003) .......................... 31

*Flow Control Indus. Inc. v. AMHI Inc.*
  278 F. Supp. 2d 1193 (W.D. Wash. 2003) .......................... 13

*Fortner Enters. v. United States Steel Corp.*,
  394 U.S. 495 (1969) .......................... 5

*F.T.C. v. Figgie Int'l, Inc.*,
  994 F.2d 595 (9th Cir. 1993) .......................... 12, 13, 14

*Geders v. United States*,
  425 U.S. 80 (1976) .......................... 32

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

*Geo. F. Martin Co. v. Royal Ins. Co. of Am.*,
2004 WL 1125048 (N.D. Cal. May 14, 2004) .......................... 32

*Grason Electric Co. v. Sacramento Municipal Utility Dist.*,
1984 U.S. Dist. LEXIS 16997 (E.D. Cal. May 3, 1984) ........................ 10

*Green v. Baca*,
226 F.R.D. 624 (C.D. Cal. 2005) ..................................... 1, 23

*Green v. Denver & Rio Grande W. R.R. Co.*,
59 F.3d 1029 (10th Cir. 1995) ........................................ 22

*Gribben v. United Parcel Serv., Inc.*,
528 F.3d 1166 (9th Cir. 2008) ........................................ 23

*Hanover Shoe, Inc. v. United Shoe Machinery Corp.*,
392 U.S. 481 (1968) ................................................... 30

*Hawaii v. Standard Oil Co. of California*,
405 U.S. 251 (1972) ................................................... 28

*HBE Leasing Corp. v. Frank*,
22 F.3d 41 (2d Cir. 1994) .......................................... 19, 20

*Henderson v. Choctaw County City of Hugo Hosp. Auth.*,
2010 U.S. Dist. LEXIS 52405 (E.D. Okla. May 27, 2010) ........................ 4

*Henderson v. Peterson*,
2011 U.S. Dist. LEXIS 76799 (N.D. Cal. July 15, 2011) ........................ 3

*Hewlett- Packard Co. v. Mustek Systems, Inc.*,
2001 WL 36166855 (S.D. Cal. June 11, 2001) .......................... 32

*Hoffmann-La Roche Ltd v. Empagran S.A.*,
542 U.S. 155 (2004) ................................................... 27

*Hynix*,
2008 WL 282376 ...................................................... 27

*Ilano v. H&R Block Eastern Enterprises*,
2011 WL 1897431 (S.D. Fla. May 11, 2011) .......................... 22

*Illinois Brick Co. v. Ill.*,
431 U.S. 720 (1977) ............................................ 8, 26, 33

*In re Airline Ticket Comm'n Antitrust Litig.*,
918 F. Supp. 283 (D. Minn. 1996) .................................... 30

*In Re ATM Fee Antitrust Litig.*,
686 F.3d 741 (9th Cir. 2012) ........................................ 13

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

*In re Flash Memory Antitrust Litig.*,
   643 F. Supp.2d 1143 (N.D. Cal. 2009) ...................................................... 6

*In re Homestore.com, Inc.*,
   2011 WL 291176 (C.D. Cal. Jan. 25, 2011) ...................................... 23, 24

*In re Static Random Access Memory (SRAM) Antitrust Litig.*,
   No. 07-md-1819 CW (N.D. Cal.) (Dec. 16, 2010) .............................. 19

*In re Tableware Antitrust Litig.*,
   2007 WL 781960 (N.D. Cal. March 13, 2007) ............................... 19, 36

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   No. M 07-1827 SI, 2011 WL 4634031 (N.D. Cal. Oct. 5, 2011) ............. 27

*In re Vitamins Antitrust Litig.*,
   2000 WL 1475705 (D.D.C. May 9, 2000) ....................................... 25

*In re West Coast Dept. Stores Antitrust Litig.*,
   1979 WL 1721 (N.D. Cal. Nov. 16, 1979) ...................................... 24

*Johnson v. Ford Motor Co.*,
   988 F.2d 573 (5th Cir. 1993) .................................................. 3, 21

*Johnson v. PS Ill. Trust*,
   2005 U.S. Dist. LEXIS 28069 (N.D. Ill. Nov. 14, 2005) ...................... 4

*Keating v. Office of Thrift Supervision*,
   45 F.3d 322 (9th Cir. 1995) .................................................... 36

*Kiefer-Stewart Co. v. Joseph E. Seagram & Sons, Inc.*,
   340 U.S. 211 (1951) .......................................................... 9, 10

*Kinan v. Brockton*,
   876 F.2d 1029 (1st Cir. 1989) ................................................ 21

*Larson v. Palmateer*,
   515 F.3d 1057 (9th Cir. 2008) ................................................ 32

*Larez v. City of Los Angeles*,
   946 F.2d 630 (9th Cir. 1991) ................................................. 13

*Lee v. National R.R. Passenger Corp.*,
   2012 WL 130267 (S.D. Miss. Jan. 17, 2012) ................................. 22

*LiButti v United States*,
   107 F.3d 110 (2d Cir. 1997) .................................................. 36

*Louis DiGidio Oil & Gas Burner Sales & Serv., Inc. v. Ace Eng'g Co., Inc.*,
   302 Minn. 19 (1974) ........................................................... 6

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

*Mason v. Texaco, Inc.*,
  741 F. Supp. 1472 (D. Kan. 1990) ........................ 31

*Mattel, Inc. v. MGA Entm't*,
  2011 U.S. Dist. LEXIS 85928 (C.D. Cal. Aug. 4, 2011) ........................ 6

*McLeod v. Parsons Corp.*,
  73 Fed. Appx. 846 (6th Cir. 2003) ........................ 4

*Meijer, Inc. v. Abbott Labs.*,
  251 F.R.D. 431 (N.D. Cal. 2008) ........................ 28

*Memorex Corp. v. IBM Corp.*,
  555 F.2d 1379 (9th Cir. 1977) ........................ 9

*Morrison Knudsen Corp. v. Ground Improvement Techs, Inc.*,
  532 F.3d 1063 (10th Cir. 2008) ........................ 6

*Muldrow v. Re-Direct, Inc.*,
  493 F.3d 160 (D.C. Cir. 2007) ........................ 25

*Myers v. Pennzoil Co.*,
  889 F.2d 1457 (5th Cir. 1989) ........................ 23

*Nationwide Life Ins. Co. v. Richards*,
  541 F.3d 903 (9th Cir. 2008) ........................ 35

*Oracle Am., Inc. v. Cedarcrestone, Inc.*,
  2013 U.S. Dist. LEXIS 48538 (N.D. Cal. 2013) ........................ 5

*Palmer v. Board of Regents of Univ. Sys. of Ga.*,
  208 F.3d 969 (11th Cir. 2008) ........................ 22

*Paper Sys. Inc. v. Nippon Paper Indus. Co.*,
  281 F.3d 629 (7th Cir. 2002) ........................ 7

*Park W. Radiology v. Carecore Nat. LLC*,
  675 F. Supp. 2d 314 (S.D.N.Y. 2009) ........................ 12

*Perma Life Mufflers v. Int'l Parts Corp.*,
  392 U.S. 134 (1968) ........................ 9

*Phillips Petroleum Co. v. Shutts*,
  472 U.S. 797 (1985) ........................ 21

*Playboy Enters. Inc. v. Chuckleberry Pub. Inc.*,
  486 F. Supp. 414 (S.D.N.Y. 1980) ........................ 23

*Quad/Graphics Inc. v. Fass*,
  724 F.2d 1230 (7th Cir. 1983) ........................ 23

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

*RAD Services, Inc. v. Aetna Casualty & Surety Co.*,
 808 F.2d 271 (3d Cir. 1986) ............................................................. 35

*Roberts v. Harnischfeger Corp.*,
 901 F.2d 42 (5th Cir. 1989) ............................................................. 22

*Robinson v. Hartzell Propeller, Inc.*,
 2008 WL 4679248 (E.D. Pa. Aug. 11, 2008) .................................... 22

*S. Pacific Co. v. Darnell-Taenzer Lumber Co.*,
 245 U.S. 531 (1918) ........................................................................ 28

*S.E.C. v. Colello*,
 139 F.3d 674 (9th Cir. 1998) ........................................................... 35

*Sanderson v. Winner*,
 507 F.2d 477 (10th Cir. 1974) ......................................................... 24

*Seals v. Mitchell*,
 2011 U.S. Dist. LEXIS 77865 (N.D. Cal. Apr. 12, 2011) ................... 3

*State of Minnesota v. Philip Morris Inc.*,
 551 N.W.2d 490 (Minn. 1996) ......................................................... 30

*Sun Microsystems Inc. v. Hynix Semiconductor Inc.*,
 622 F. Supp.2d 890 (N.D. Cal. 2009) .......................................... 35, 36

*Tinius v. Carroll County Sheriff Dept.*,
 2004 WL 3103962 (N.D. Iowa Dec. 22, 2004) ................................ 21

*United States ex rel. Evergreen Pipeline Constr. Co., Inc. v. Merritt-Meridian Constr. Corp.*,
 1994 WL 577637 (S.D.N.Y. Oct. 19, 1994) .................................... 21

*United States v. E. I. du Pont de Nemours & Co.*,
 351 U.S. 377 (1956) .......................................................................... 5

*United States v. Ham*,
 998 F.2d 1247 (4th Cir. 1993) ........................................................... 1

*United States v. James*,
 139 F.3d 709 (9th Cir. 1998) ............................................................. 4

*United States v. Khan*,
 508 F.3d 413 (7th Cir. 2007) ........................................................... 19

*United States v. Solano-Godines*,
 120 F.3d 957 (9th Cir. 1997) ........................................................... 35

*Wehling v. Columbia Broadcasting Syst.*,
 608 F.2d 1084 (5th Cir. 1979) ......................................................... 35

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

*Wilk v. American Medical Assoc.*,
719 F.2d 207 (7th Cir. 1983) .............................................................. 10

*Williams v. Lovchik*,
2012 U.S. Dist. LEXIS 99657 (S.D. Ind. July 18, 2012) ......................... 3

*Young v. Verson Allsteel Press Co.*,
539 F. Supp. 193 (E.D. Pa. 1982) ..................................................... 2, 23

**Statutes**

15 U.S.C. § 16 ........................................................................................ 2

**Other Authorities**

Weinstein's Federal Evidence, § 403.05[3][a]]
(Joseph M. McLaughlin, ed., Matthew Bender 2d Ed. 2011) ................... 21

**Rules**

Fed. R. App. P. 26.1 ............................................................................. 11

Fed. R. Civ. Pro. 7.1 ....................................................................... 11, 12

Fed. R. Evid. 401 ...................................................................... 11, 18, 23

Fed. R. Evid. 402 ............................................................................. 1, 10

Fed. R. Evid. 403 ......................................................................... passim

Fed. R. Evid. 408 ............................................................................. 1, 23

Fed. R. Evid. 615 ................................................................................. 32

Fed. R. Evid. 803 ................................................................................... 2

Fed. R. Evid. 807 ........................................................................... 11, 12

Fed. R. Evid. 404 ............................................................................... 2, 3

Fed. R. Evid. 602 ................................................................................. 25

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

   PLEASE TAKE NOTICE THAT on July 9, 2013, at 3:30 p.m., before the Honorable Susan Y. Illston, United States District Judge of the Northern District of California, San Francisco Division, located in Courtroom 10, 19th Floor, 455 Golden Gate Avenue, San Francisco, California, the Track 1B Plaintiffs[1] ("Plaintiffs") will and hereby do move the Court for an order granting the following Motions *In Limine*:

**A.    Motions *In Limine* on Topics That Have Not Been Specifically Ruled Upon.**

   1.    Motion to Exclude Evidence of Unrelated Litigation.

   2.    Motion to Exclude References or Arguments of Plaintiffs' Purported "Market Power".

   3.    Motion to Exclude Evidence or Argument that the Indirect Purchase Plaintiff Class Has Settled or Been Made Whole.

   4.    Motion to Exclude Evidence or Argument That Toshiba's Products Sold to Plaintiffs Did Not Contain Toshiba Panels.

   5.    Motion to Exclude Arguments that Best Buy Engaged in Communications With Competitors.

   6.    Motion to Exclude References or Arguments Regarding Special Master Quinn's Order Striking Certain Portions of Professor David Stowell's Rebuttal Opinions.

   7.    Motion to Admit Corporate Disclosure Statements Filed in Non-Related Cases Pursuant to Rule 807.

   8.    Motion to Exclude Evidence, Reference or Argument Regarding Eric Korman and Dell's Alleged Knowledge of Defendants' Conspiracy.

   9.    Motion to Exclude Evidence Related to Best Buy's Alleged Knowledge of The Conspiracy from Use Against Kodak and The Target Plaintiffs .

---

[1] The Track 1B Plaintiffs are the Best Buy Plaintiffs, Target Corporation, Sears, Roebuck & Co., Kmart Corp., RadioShack Corp., Old Comp, Inc., Newegg, Inc., Good Guys Inc., and Eastman Kodak Company.

| | |
|---|---|
| 1 | **B.**      **Motions *In Limine* Previously Granted by The Court.** |
| 2 |      10.      Motion to Exclude References to, and Evidence of The Ability of Plaintiffs to |
| 3 |      Seek Treble Damages and Attorneys' Fees and Costs. |
| 4 |      11.      Motion to Exclude References or Arguments Regarding Other Actions and |
| 5 |      Settlements in this MDL. |
| 6 |      12.      Motion to Exclude References to The Current Financial Condition of Any of The |
| 7 |      Named Plaintiffs. [Brought *By All Plaintiffs Except Kodak.*]. |
| 8 |      13.      Motion to Exclude References to Statements Made by Department of Justice |
| 9 |      Officials Regarding Multiple Conspiracies. |
| 10 |      14.      Motion to Exclude Any Reference to The Department of Justice's Rule 12.4 |
| 11 |      Disclosures in The Related Criminal Actions. |
| 12 |      15.      Motion to Preclude Argument That Plaintiffs' Claims Are Barred Because They |
| 13 |      Arise from Foreign Commerce. |
| 14 |      16.      Motion to Preclude Evidence Regarding "Pass-On" in Connection With Best |
| 15 |      Buy's and The Target Plaintiffs' Claims. |
| 16 |      17.      Motion to Exclude Evidence Regarding Plaintiffs' Alleged Failure to Mitigate |
| 17 |      Their Damages. |
| 18 |      18.      Motion to Exclude Live Witnesses from Testifying in Defendants' Case-In-Chief |
| 19 |      Who Were Not Made Available for Live Testimony in Plaintiffs' Case-In-Chief. |
| 20 |      19.      Motion to Exclude Percipient Witnesses, Except for A Party Representative, from |
| 21 |      The Courtroom Unless Testifying. |
| 22 |      20.      Motion to Preclude Expert Witness Testimony on Incomplete Pass-On of |
| 23 |      Overcharges Through Affiliate Entities (Royal Printing). |
| 24 | **C.**      **Motions *In Limine* Previously Denied by The Court.** |
| 25 |      21.      Motion to Admit Evidence That Certain Witnesses Have Invoked The Fifth |
| 26 |      Amendment Privilege Against Self-Incrimination. |
| 27 | |
| 28 | |

Plaintiffs' Motions *In Limine* (Nos. 1 - 21)         Master File No. M07-1827 SI
Individual Files 10-CV-4572; 10-CV-5452; 10-CV-4945; 12-CV-4114
3

83947821.6

**D.      Motions *In Limine* to be Separately Filed on Behalf of the Plaintiffs.**

22.     Plaintiffs' Notice of Motion and Motion for Pre-Trial Ruling on the Admissibility of Documents.

23.     Plaintiffs' Notice of Motion and Motion for Pre-Trial Ruling on Summary Witness Testimony Reflecting Conspiracy Meetings and Communications.

These motions are based on this notice, supporting memorandum of points and authorities, and the other records, papers, and orders in this action, as well as such additional evidence and arguments as may be presented by the parties before or at the hearing.

Respectfully submitted this 18th day of June, 2013.

*/s/ Roman M. Silberfeld*

Roman M. Silberfeld, Bar No. 62783
David Martinez, Bar No. 193183
ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
2049 Century Park East, Suite 3400
Los Angeles, CA  90067-3208
Telephone:      310-552-0130
Facsimile:      310-229-5800
Email:      RMSilberfeld@rkmc.com
                DMartinez@rkmc.com

Laura E. Nelson, Bar No. 231856
ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
800 LaSalle Avenue
2800 LaSalle Plaza
Minneapolis, MN  55402
Telephone:      612-349-8500
Facsimile:      612-339-4181
Email:      LENelson@rkmc.com

*Attorneys For Plaintiffs Best Buy Co., Inc.; Best Buy Purchasing LLC; Best Buy Enterprise Services, Inc.; Best Buy Stores, L.P.; BestBuy.com, LLC; and Magnolia Hi-Fi, Inc.*

*/s/ Janet I. Levine*

Jason C. Murray (CA Bar No. 169806)
Janet I. Levine (CA Bar No. 94255)
CROWELL & MORING LLP
515 South Flower St., 40th Floor
Los Angeles, CA 90071
Telephone:      213-622-4750
Facsimile:      213-622-2690
Email:      jmurray@crowell.com
                jlevine@crowell.com

Jeffrey H. Howard (pro hac vice)
Jerome A. Murphy (pro hac vice)
Matthew J. McBurney (pro hac vice)
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone:    202-624-2500
Facsimile:    202-628-5116
Email:    jhoward@crowell.com
              jmurphy@crowell.com
              mmcburney@crowell.com

Kenneth L. Adams (pro hac vice)
R. Bruce Holcomb (pro hac vice)
Christopher T. Leonardo (pro hac vice)
ADAMS HOLCOMB LLP
1875 Eye Street NW
Washington, DC 20006
Telephone:    202-580-8822
Facsimile:    202-580-8821
Email:    adams@adamsholcomb.com
              holcomb@adamsholcomb.com
              leonardo@adamsholcomb.com

*Attorneys for Plaintiffs Target Corporation; Sears, Roebuck & Co.; Kmart Corp.; RadioShack Corp., Old Comp, Inc.; Newegg, Inc., and Good Guys Inc.*

                    */s/ Karl D. Belgum*
Karl D. Belgum (State Bar No. 122752)
John R. Foote (State Bar No. 99674)
Blaire Z. Russell (State Bar No. 271693)
NIXON PEABODY LLP
One Embarcadero Center, 18th Floor
San Francisco, CA 94111-3600
Telephone:    415- 984-8200
Facsimile:    415-984-8300
Email:    kbelgum@nixonpeabody.com
              jfoote@nixonpeabody.com
              brussell@nixonpeabody.com

*Attorneys for Plaintiff Eastman Kodak Company*

Plaintiffs' Motions *In Limine* (Nos. 1 - 21)                    Master File No. M07-1827 SI
                              Individual Files 10-CV-4572; 10-CV-5452; 10-CV-4945; 12-CV-4114
                                                            5

83947821.6

# **PRIOR RELEVANT COURT ORDERS**

Pursuant to the Court's Order of April 9, 2012 (MDL Dkt. No. 5430), Plaintiffs identify the following relevant orders:

*In re TFT-LCD (Flat Panel) Antitrust Litigation*, No. M 07-1827 SI (Relating to All Direct-Purchaser Plaintiff Class Actions), Final Pretrial Scheduling Order (MDL Dkt. No. 5597, May 4, 2012).

*In re TFT-LCD (Flat Panel) Antitrust Litigation*, No. M 07-1827 SI (Relating to *Dell Inc. v. AU Optronics Corporation*, C 10-1064 SI), Order Denying Defendants' Motion for Partial Summary Judgment Dismissing Dell's Pre-December 2002 Claims as Time-Barred and for Partial Summary Judgment of Dell's Failure to Mitigate Damages at 4 (MDL Dkt. No. 7676, Nov. 30, 2012).

*In re TFT-LCD (Flat Panel) Antitrust Litigation,* No. M 07-1827 SI, (Relating to *Best Buy v. AU Optronics Corporation*, C 10-4572 SI), Order Denying Defendants' Motion For Partial Summary Judgment Dismissing Best Buy's Pre-October 8, 2006 Claims As Time-Barred And For Partial Summary Judgment Of Best Buy's Failure To Mitigate Damages; Granting Motion For Leave To File Second Amended Complaint (MDL Dkt. No. 7317, Dec. 10, 2012)

*In re TFT-LCD (Flat Panel) Antitrust Litigation,* No. M 07-1827 SI (Relating to *Best Buy v. AU Optronics Corporation*, C 10-4572 SI), Order Denying LG Display America, Inc. and LG Display Co., Ltd.'s Motion for Leave to Amend re Duplicative Recovery (MDL Dkt. No. 5795, May 25, 2012)

# I.

## INTRODUCTION

Plaintiffs respectfully request that the Court issue the following orders excluding certain evidence from trial on grounds that is irrelevant, inadmissible, and/or unduly prejudicial and admitting certain other evidence. Plaintiffs have organized the motions *in limine* as follows: (1) motions on issues that the Court has not previously ruled upon; (2) motions that the Court has previously granted; and (3) motions that the Court has previously denied.

# II.

## GOVERNING RULES

Under Rule 402,[2] only relevant evidence is admissible. Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action. Under Rule 403, however, even evidence which may have some probative value should be precluded if that evidence would be "substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "'Unfair prejudice' within its context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Fed. R. Evid. 403, 1972 Advisory Committee Note; *see also United States v. Ham*, 998 F.2d 1247, 1252 (4th Cir. 1993) ("We have defined undue prejudice as 'a genuine risk that the emotions of the jury will be excited to irrational behavior, and that this risk is disproportionate to the probative value of the offered evidence.'").

Evidence of civil settlements or conduct or statements made during settlement negotiations are should also be precluded. *See* Fed. R. Evid. 408; *see also Green v. Baca*, 226 F.R.D. 624, 640 (C.D. Cal. 2005). The Court should also exclude evidence of prior settlements where there is a risk that a jury could improperly reduce its damages award because of its belief that the plaintiff has already been compensated. *Young v. Verson Allsteel Press Co.*, 539 F. Supp.

---

[2] All references are to the Federal Rules of Evidence unless otherwise noted.

193 (E.D. Pa. 1982).  Evidence of criminal pleas and judgments, on the other hand, are admissible under 15 U.S.C. § 16 and Rule 803(22) of the Federal Rules of Evidence.

## II.

## LEGAL ARGUMENT

### A.    MOTIONS *IN LIMINE* ON ISSUES THAT HAVE NOT BEEN SPECIFICALLY RULED UPON BY THE COURT

#### 1.    Motion to Exclude Evidence of Unrelated Litigation.

Toshiba has, throughout this litigation, repeatedly indicated that it intends to attempt to introduce evidence of unrelated litigation against Best Buy.[3]  This is improper evidence under Rule 403 with no redeeming probative value under Rule 404(b), and it should be excluded.

For example, during the deposition of Best Buy's witnesses, Toshiba's counsel attempted to accuse Best Buy of racial profiling.  Toshiba's counsel repeatedly questioned Best Buy's witnesses about Customer Centricity, which was designed to study the different needs of the various segments of Best Buy's customer base.  Best Buy identified characteristics of its customer groups such as income, age and shopping habits, and then assigned each group a different name.  Best Buy's witnesses have invariably testified that Customer Centricity was not a race-based program.  Similarly, Toshiba questioned a Best Buy witness about a separate employment lawsuit, *Abed v. Best Buy*, in which plaintiff alleged racial discrimination.

Toshiba attorneys also repeatedly questioned Best Buy witnesses about other unrelated cases and matters, including *TechForward v. Best Buy*, a case in which Best Buy was alleged to have misappropriated unrelated trade secrets.  Notably, the conduct at issue in *TechForward* post-dates the conspiracy period in this case and the action is currently on appeal.  Another Best Buy witness was asked about *Jermyn v. Best Buy*, a consumer class action filed against Best Buy based on a complaint about the execution of its price match policy.

---

[3] Relatedly, this Court previously granted the Direct Purchaser Plaintiffs' ("DPP") motion *in limine* to exclude references to, and evidence regarding, other lawsuits filed by any of the named plaintiffs in other cases.  *See* Dkt. No. 5129, MIL No. 7 and Final Pretrial Scheduling Order, Dkt. No. 5597.

Toshiba's anticipated attempt to introduce evidence of Best Buy's Customer Centricity program and other unrelated cases is an unabashedly shameless ploy to distract from Defendants' criminal conduct and improperly prejudice the jury against Best Buy.  Notably, Special Master Martin Quinn has already rejected Toshiba's attempt to delve into these cases.  On May 29, 2013, Special Master Quinn rejected Toshiba's motion for discovery on the *TechForward* matter, reasoning that the subject matter of the case was unrelated and, therefore, there was "absolutely no reason to think" that it would have any bearing in this antitrust action.  Dkt. No. 8025, at p. 6. Further,

> Nor can one imagine the Court permitting a side excursion into the details of another lawsuit simply to gauge his credibility on that issue.  Were that to happen … the LCD trial could be trying a 'case within a case.'  *Id.*

Special Master Quinn's reasoning is sound and applies beyond *TechForward.*  Claims regarding Best Buy's "Customer Centricity" program and price match policy have no bearing on the question of whether Toshiba conspired with the other defendants to fix prices on LCD panels and whether Best Buy has been damaged.  Moreover, any evidence regarding these cases will invariably result in the improper "case within a case" referenced by Special Master Quinn.

Courts across the country routinely grant motions *in limine* precluding evidence of other litigation as irrelevant, prejudicial, wasteful, confusing and improper character evidence.  *See, e.g., Duran v. City of Maywood*, 221 F.3d 1127, 1133 (9th Cir. 2000) (excluding evidence of unrelated shooting by defendant officer as it would have required a "full blown trial within this trial"); *Johnson v. Ford Motor Co*., 988 F.2d 573, 578–79 (5th Cir. 1993) (proper to exclude evidence of prior lawsuits involving different plaintiffs, accidents, and defects); *Blancha v. Raymark Inds.*, 972 F.2d 507, 516 (3d Cir. 1992) ("Evidence relating to previous litigation involving the parties" is "routinely excluded" under Federal Rule of Evidence 403); *Henderson v. Peterson*, 2011 U.S. Dist. LEXIS 76799, at *16-17 (N.D. Cal. July 15, 2011) (excluding evidence of other lawsuits under Rules 403 and 404); *Seals v. Mitchell*, 2011 U.S. Dist. LEXIS 77865, at *16-17 (N.D. Cal. Apr. 12, 2011) (excluding references to the plaintiff's other lawsuits or grievances); *Williams v. Lovchik*, 2012 U.S. Dist. LEXIS 99657, at *4 (S.D. Ind. July 18, 2012)

(granting defendants' motion *in limine* to exclude evidence of other lawsuits against defendants because "[s]uch evidence would have little to no probative value while running the risk of needlessly prejudicing the jury."); *Henderson v. Choctaw County City of Hugo Hosp. Auth.,* 2010 U.S. Dist. LEXIS 52405, at *1–2 (E.D. Okla. May 27, 2010) (granting plaintiff's motion *in limine* to exclude evidence of her prior divorce and other unspecified litigation as irrelevant); *Albach v. Hess*, 2006 U.S. Dist. LEXIS 33911, at 3 (N.D. Ohio May 26, 2006) (granting motion *in limine* to exclude evidence of other malpractice claims filed against defendant doctor); *Johnson v. PS Ill. Trust*, 2005 U.S. Dist. LEXIS 28069, *14–15 (N.D. Ill. Nov. 14, 2005) (excluding evidence of other actions because "[w]hether or not [defendant] is involved in other actions with different plaintiffs and different facts has no bearing on the facts at issue in the instant action.").

Moreover, the Ninth Circuit has noted that the injection of racial prejudice into a trial, as Toshiba seeks to do here, risks confusing the jury "because of the provocative nature of the topic." *United States v. James*, 139 F.3d 709, 713 (9th Cir. 1998) (excluding evidence of witness's alleged racial bias under Rule 403); *see also Buonanoma v. Sierra Pac. Power Co.*, 2010 U.S. Dist. LEXIS 105300, at *12–13 (D. Nev. Sept. 16, 2010) (granting defendant employer's motion *in limine* to exclude evidence of other undefined employment discrimination lawsuits and holding that although the evidence was relevant it was more unfairly prejudicial than probative); *McLeod v. Parsons Corp.*, 73 Fed. Appx. 846, 854 (6th Cir. 2003) ("[T]here was no clear nexus between these [other employment discrimination] lawsuits and this case. The employees who filed these actions worked at several different offices, and were discharged for a variety of reasons. Additionally, the potential for prejudice . . . would have substantially outweighed its probative value, and this evidence would have misled the jury.").

As in the cited cases here, Toshiba is improperly attempting to distract the jury from Toshiba's misconduct with inflammatory, irrelevant and highly prejudicial evidence of other lawsuits. The Court should not permit Defendants to do so.

1     **2.**      **Motion to Exclude Reference and Argument of Plaintiffs' Purported "Market**

2               **Power."**

3       In deposition testimony, at least one Toshiba witness repeatedly referred to Best Buy as

4 having "market power." This is another improper attempt by Toshiba to suggest to the jury that

5 Best Buy somehow engaged in wrongful conduct. It has no probative value, and should excluded

6 as prejudicial under Rule 403.

7       "Market power" is a legal term with specific implications under the Sherman Act. Market

8 power is the power "to force a purchaser to do something that he would not do in a competitive

9 market." *Eastman Kodak Co. v. Image Tech. Servs.*, 504 U.S. 451, 464 (1992). The Supreme

10 Court has further defined it as "the ability of a single seller to raise price and restrict output."

11 *Fortner Enters. v. United States Steel Corp.*, 394 U.S. 495, 503 (1969); *United States v. E. I. du*

12 *Pont de Nemours & Co.*, 351 U.S. 377, 391 (1956). As such, "market power" may give rise to

13 claims for violations of the Sherman Act. *See, e.g., Oracle Am., Inc. v. Cedarcrestone, Inc.*, 2013

14 U.S. Dist. LEXIS 48538, *18 (N.D. Cal. 2013) (addressing whether plaintiff had properly alleged

15 "market power" in support of a tying arrangement in violation of the Sherman Act).[4]

16       Defendants' use of the term "market power" is thus an improper attempt to incite

17 prejudice against Best Buy. Indeed, allowing Defendants to attempt to introduce testimony and

18 unsupported evidence of Plaintiffs' alleged "market power" would risk all of the dangers that

19 Rule 403 is intended to address, i.e., "unfair prejudice, confusing the issues, [and] misleading the

20 jury." Fed. R. Evid. 403. The same would also be true if Defendants attempt to allege "market

21 power" with respect to any other Plaintiff in this trial. Plaintiffs therefore request that the Court

22 exclude any testimony or evidence of any Plaintiffs' alleged "market power."

23

24

25 ───────────────

[4] "A tying arrangement is an agreement by a party to sell one product but only on the condition

26 that the buyer also purchases a different (or tied) product, or at least agrees that he will not
purchase that product from any other supplier. . . . Such an arrangement violates § 1 of the

27 Sherman Act if the seller has appreciable economic power in the tying product market and if the
arrangement affects a substantial volume of commerce in the tied market." *Id*., quoting *Eastman*

28 *Kodak Co.*, 504 U.S. at 461-62.

**3. Motion to Exclude Evidence or Argument that the Indirect Purchase Plaintiff Class Has Settled or Been Made Whole.**

Defendants seem intent on arguing to the jury that Plaintiffs are not entitled to recover damages because the Indirect Purchaser Plaintiff Class ("IPP") has been made whole. This is a factually and legally baseless argument that presents a substantial risk of undue prejudice, jury confusion and improper consumption of time. Indeed, this Court has repeatedly rejected Defendants' attempts to assert duplicative recovery defenses and counterclaims, finding that the potential impact of prior settlements must be resolved post-trial.[5] Thus:

> The Court found then [in denying Defendants' trial structure motion] and finds now that Defendants have not provided legal basis for their proposed 'violation of duplicative recovery' defense or for their proposed counterclaim for declaratory judgment regarding the same. Dkt. No. 5795, at p. 1.

The Court further explained that "[d]uplicative recovery is, in many if not all cases alleging nationwide conspiracy with both direct and indirect purchases classes, a necessary consequence that flows from indirect purchaser recovery." *Id., quoting In re Flash Memory Antitrust Litig*., 643 F. Supp.2d 1143, 1156 (N.D. Cal. 2009). The Court also instructed that "**should defendants wish to challenge allocation of damages, they are free to do so post-trial**." *Id.* [emphasis added]; *see also Mattel, Inc. v. MGA Entm't*, 2011 U.S. Dist. LEXIS 85928, ** 56-57 (C.D. Cal. Aug. 4, 2011) (remittitur is proper vehicle to address claims of duplicative recovery).[6]

In short, there is no basis upon which to introduce evidence of the IPP settlement. The settlement is not relevant to any issue in dispute, and any probative value, if any, is easily outweighed by the danger of undue prejudice and jury confusion. Further, evidence of the

---

[5] *See, e.g.*, Order Regarding Trial Structure in Direct and Indirect Purchaser Plaintiff Class Actions, Dkt. No. 5518; Order Denying Motion for Leave to Amend re Duplicative Recovery, Dkt. No. 5795; Order Granting Plaintiff's Motion to Dismiss Counterclaims and Strike Defenses re Duplicative Recovery. Dkt. 6227.

[6] *See also id., citing Morrison Knudsen Corp. v. Ground Improvement Techs, Inc*., 532 F.3d 1063, 1079 (10th Cir. 2008); *Eccleston v. New York City Health & Hosps. Corp*., 698 N.Y.S.2d 869, 870 (1998); *Louis DiGidio Oil & Gas Burner Sales & Serv., Inc. v. Ace Eng'g Co., Inc*., 302 Minn. 19, 29 (1974).

1    settlement is intended to improperly attempt to persuade the jury that damages should not be

2    awarded because the consumer class was supposedly already compensated.  The premise

3    underlying this argument is false, and the impact of the settlement is an issue for the Court to

4    determine post-trial.  As such, the Court should prohibit Defendants from making any reference

5    to, and/or introducing evidence of, the IPP settlements.

6         **4.      Motion to Exclude Evidence or Argument That Toshiba's Products Sold to**

7              **Plaintiffs Did Not Contain Toshiba Panels.**

8         Plaintiffs expect that Toshiba will argue to the jury that only a small amount of Toshiba

9    panels were used in the billions of dollars' worth of LCD products that Plaintiffs purchased from

10   Toshiba over the conspiracy period.  Toshiba's intent is clear – it hopes that the jury will be

11   improperly persuaded to ignore Toshiba's joint and several liability for all the harm caused by the

12   LCD price fixing conspiracy.  That Toshiba made a small percentage of panels that went into

13   Plaintiffs' finished products is completely irrelevant and should be excluded.

14        Indeed, this Court has repeatedly recognized the clear implications of joint and several

15   liability for violation of the Sherman Act.  *See, e.g.*, *AT&T Mobility LLC v. AU Optronics Corp.*

16   (*In re TFT-LCD (Flat Panel) Antitrust Litig.*), 2010 U.S. DIST. LEXIS 72426, at 23 (N.D. Cal.

17   July 19, 2010) ("Nothing in Illinois Brick displaces the rule of joint and several liability, under

18   which each member of a conspiracy is liable for all damages caused by the conspiracy's entire

19   output.") (quoting *Paper Sys. Inc. v. Nippon Paper Indus. Co.*, 281 F.3d 629 (7th Cir. 2002)).

20        In *Nippon Paper Indus.*, the plaintiff accused five defendant manufacturers of thermal

21   facsimile paper of price-fixing.  The fifth manufacturer, Nippon Paper, avoided liability on the

22   ground that it did not sell directly to the plaintiffs.  The Seventh Circuit reversed.  Relying on the

23   rule of joint and several liability, the Court found that Nippon Paper could still be held liable if it

24   conspired with the other manufacturers to price fix.  *Id.*  ("If Nippon Paper was among [the]

25   conspirators, then it is responsible for the entire overcharge of *all five manufacturers*—and any

26   direct purchaser from any conspirator can collect its own portion of damages (that is, the damages

27   attributable to its direct purchases) from any conspirator."); *see also Crane v. Int'l Paper Co.*,

28   2005 U.S. Dist.  LEXIS 15590, at *28 (D. S.C. April 19, 2005).

---

Plaintiffs' Motions *In Limine* (Nos. 1 - 21)                    Master File No. M07-1827 SI
                          Individual Files 10-CV-4572; 10-CV-5452; 10-CV-4945; 12-CV-4114
                                              7

83947821.6

Moreover, under this Court's ruling denying Defendants' Motion for Summary Judgment under *ATM Fee*, the Sherman Act applies to purchases of finished products when a plaintiff (1) buys a product containing a panel made by a conspirator and (2) the finished product is sold by a conspirator or by an entity which is owned or controlled by, or owns or controls, any one of the conspirators. *See* Dkt. No. 7188 (explaining that "ownership/control may exist if the direct purchaser owns/controls the seller/manufacturer or if a co-conspirator owns/controls the direct purchaser"). Indeed, this Court subsequently denied Toshiba's Motion for to Dismiss Best Buy's First Amended Complaint on identical grounds. Dkt. No. 7543, at p. 5:22-28 ("Toshiba continues to rely on an interpretation of *ATM Fee* that this Court already specifically rejected in its Order denying Toshiba's Motion for Partial Summary Judgment for Lack of Standing under *Illinois Brick*[7] and *ATM Fee*. *See* Dkt. No. 7188. Contrary to Toshiba's allegations, the ownership and control exception, as explained in *ATM Fee*, is not available "only where the initial seller of the price-fixed good owns or controls the direct purchaser.").

Thus, Toshiba faces liability for all finished LCD products it sold to Plaintiffs that contained a price-fixed panel, irrespective of whether some or even all of the panels were manufactured by other Defendants. Toshiba may argue that evidence that only a small percentage of Toshiba panels were included in products sold to Best Buy is relevant to show that Toshiba was a "net purchaser" and therefore lacked economic incentive to join the conspiracy. While this argument has been fully discredited by Best Buy's expert Dr. Doug Bernheim, Toshiba can attempt to make its "net purchaser" argument without specifically arguing to the jury that most of the Toshiba products it sold to Best Buy did not contain Toshiba panels.

In short, any argument distinguishing between panels sold to Plaintiffs by Toshiba and its co-conspirators has no bearing on Toshiba's liability and is contrary to cardinal rules of joint and several liability, and this Court's ruling under *ATM Fee*. The argument is plainly designed to mislead the jury and improperly prejudice Plaintiffs. As such, the Court should prohibit Toshiba from presenting any such evidence to the jury.

---

[7] *Illinois Brick Co. v. Ill.*, 431 U.S. 720 (1977).

5.     **Motion to Exclude Arguments or Evidence That Best Buy Engaged in Communications With Competitors.**

Plaintiffs anticipate that Defendants will attempt to excuse their own conspiratorial conduct by introducing evidence that Best Buy's (and perhaps other Plaintiffs') employees had communications with competitors through its competitive intelligence program. This argument is contrary to the evidence, is not related to any claim or defense, and would only serve to confuse the jury and unfairly prejudice Best Buy.

Best Buy's witnesses have testified that Best Buy has a competitive intelligence department, and that Best Buy followed the ethical standards of the Society of Competitive Intelligence Professionals when gathering competitive information. This department gathered intelligence by monitoring competitor advertisements, visiting its competitors and recording publicly displayed pricing, subscribing to third party industry analyst information, attending analyst calls, and conducting "mystery shops" of its competitors. Best Buy analyzed this information to evaluate its competition and its own pricing. Defendants have argued that this testimony is evidence that Best Buy engaged in the same type of communications with competitors that form the basis for Defendants' conspiracy. Because any attempt to equate Best Buy's ethical business practices with the Defendants' illegal conduct is completely baseless, this argument is completely inappropriate and should be excluded.

It is black letter law that evidence of a plaintiff's own alleged anticompetitive conduct is not a defense to an antitrust action and is therefore inadmissible. *Kiefer-Stewart Co. v. Joseph E. Seagram & Sons, Inc.*, 340 U.S. 211, 214 (1951) (overruled in part on other grounds in *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752 (1984)) (this plaintiff's conduct cannot legalize an unlawful combination by defendants nor immunize them against liability to those they injured); *Perma Life Mufflers v. Int'l Parts Corp.*, 392 U.S. 134, 139 (1968) (fact that plaintiff was involved in similar conduct is not a defense to an antitrust claim); *Memorex Corp. v. IBM Corp.*, 555 F.2d 1379, 1380-1381 (9th Cir. 1977) (same); *Chrysler Corp. v. General Motors Corp.*, 596 F. Supp. 416, 419-420 (D. D.C. 1984) (striking affirmative defense of unclean hands on ground that the plaintiff's alleged anticompetitive conduct was not a valid defense in an

1  antitrust action brought under the Sherman and Clayton Acts); *Grason Electric Co. v. Sacramento*

2  *Municipal Utility Dist.*, 1984 U.S. Dist. LEXIS 16997 at *4 (E.D. Cal. May 3, 1984) ("Whether

3  the conduct complained of by [defendant] is characterized as 'unclean hands' or illegal activity, it

4  is clear that in either case the defense is insufficient to defeat plaintiffs' antitrust claim.").

5  Thus, in *Wilk v. American Medical Assoc.*, 719 F.2d 207, 232 (7th Cir. 1983), the trial

6  court allowed defendants, who were charged with violating Sections 1 and 2 of the Sherman Act,

7  to introduce evidence that the plaintiffs had also violated antitrust laws.  The Seventh Circuit

8  reversed and remanded the matter for a new trial, finding that the evidence of the plaintiff's own

9  alleged violations of the antitrust laws should not have been admitted as it created a danger of

10  unfair prejudice and confusion under Rule 403.  *Id.* at 231-232.  The Court also found that the

11  prejudice caused by admitting the evidence could not have been overcome by an instruction that

12  the unclean hands defense was unavailable.  *Id.* at 232.

13  The principle behind these holdings is that a defendant cannot excuse its illegal conduct

14  by equating it to the plaintiff's conduct.  *See Kiefer-Stewart Co.*, 340 U.S. at 214 (conduct of the

15  plaintiff cannot legalize an unlawful combination by defendants nor immunize them against

16  liability to those they injured).  That is exactly what the Defendants are attempting to do in this

17  case—they intend to argue that Best Buy cannot claim that Defendants' illegal price-fixing and

18  conspiratorial communications are not illegal because Best Buy supposedly had the same type of

19  communications with its competitors.  Best Buy's conduct is irrelevant to the inquiry of whether

20  the Defendants committed antitrust violations, and the evidence is aimed solely at impermissibly

21  confusing the jury.  Therefore, any evidence of Best Buy's (or perhaps any other Plaintiffs')

22  communications with competitors should be excluded under Rules 402 and 403.

23  **6.**    **Motion to Exclude References or Arguments Regarding Special Master**

24  **Quinn's Order Striking Certain Portions of Professor David Stowell's**

25  **Rebuttal Opinions.**

26  Plaintiffs move to exclude any reference to Special Master Quinn's Order striking certain

27  opinions from the rebuttal report of Professor David Stowell as improper rebuttal.  *See* Dkt. No.

28  6166 (striking Professor Stowell's "real option" opinions from his rebuttal report as improper

---

rebuttal testimony) ("Stowell Order").  The Stowell Order has no probative value and presents substantial risk of undue prejudice.

Professor Stowell opined in his opening report that Defendants would have made substantial investments in new fabrication plants even in the absence of the conspiratorial overcharge.  For example, he opined that AUO would have invested in new production facilities because their Net Present Value and operating cash flow would have been positive and their Internal Rate of Return "attractive."  In his rebuttal report, Dr. Stowell also opined, *inter alia*, that Defendants would likely have made capital investments due to their "real option value."  Defendants moved to strike portions of Professor Stowell's rebuttal report on grounds that this analysis deviated from the original opinions.  Special Master Quinn granted Defendants' motion as it related to Professor Stowell's "real option" opinions as improper rebuttal testimony.  Dkt. No. 6166.

Plaintiffs do not contest Special Master Quinn's Order and do not intend to offer any portion of Professor Stowell's stricken opinion.  But the Stowell Order was premised on procedural grounds and is not relevant to the claims and defenses at issue.  Fed. R. Evid. 401.  Reference to the Stowell Order would not assist the trier of fact to assess Professor Stowell's credibility or opinions.  Conversely, any reference to the Stowell Order would improperly suggest that Special Master Quinn and/or the Court have made findings regarding Professor Stowell's credibility.  References or arguments about the Stowell Order are unfairly prejudicial without any countering probative value and should be excluded.  *See* Fed. R. Evid. 403.

### 7. Motion to Admit Corporate Disclosure Statements Filed in Non-related Cases Pursuant to Rule 807.

Pursuant to Fed. R. Evid. 807 and the authorities cited herein, Plaintiffs request that the Court enter an order admitting corporate disclosure statements filed by various parties under Fed. R. Civ. P. 7.1, Fed. R. App. P. 26.1, any applicable local rules, and the respective state law equivalents.

Evidence is admissible under Fed. R. Evid. 807 if the evidence: (1) has circumstantial guarantees of trustworthiness; (2) is offered as evidence of a material fact; (3) is more probative

on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts; and (4) will best serve the purposes of these rules and the interests of justice. *See, e.g.*, *F.T.C. v. Figgie Int'l, Inc.*, 994 F.2d 595, 608 (9th Cir. 1993). Corporate disclosure statements filed in various courts by counsel, on behalf of their corporate clients, meet the requisite standards, and are thus admissible under Rule 807.[8]

First, corporate disclosure statements bear circumstantial guarantees of trustworthiness because they are comprised of tangible, verifiable facts regarding the ownership relationships among corporate family members—and they are used solely to determine whether a judge's financial interests disqualify him or her from presiding over a case. *See* Committee Notes on Fed. R. Civ. P. 7.1. They do not address the merits or procedural requirements of a particular case, and they are not advocacy pieces, subject to varying interpretations, and prepared by opposing counsel arguing on behalf of their clients. *See Park W. Radiology v. Carecore Nat. LLC*, 675 F. Supp. 2d 314, 332 (S.D.N.Y. 2009) (noting that advocacy pieces may not bear circumstantial guarantees of trustworthiness). Indeed, responsive pleadings are not even required under the Federal Rules of Civil Procedure when a party files a corporate disclosure statement. *See* Fed. R. Civ. P. 7.1.

Moreover, corporate disclosure statements are signed by attorneys admitted to practice before the respective courts, who, as officers of the courts, "ha[ve] a duty of good faith and candor in dealing with the judiciary." *Alvarado v. FedEx Corp.*, 2009 WL 734683 (N.D. Cal. Mar. 19, 2009) *vacated in part on other grounds*, 384 F. Appx 594 (9th Cir. 2010); *see also A.I. Trade Fin., Inc. v. Centro Internationale Handelsbank AG*, 926 F. Supp. 378, 390, n.14 (S.D.N.Y. 1996) (noting that pleadings are "signed or submitted by counsel, who are officers of the court and practice under a duty to be truthful to the court."). Given the primarily informative (and non-confrontational) nature of corporate disclosure statements, coupled with an attorney's duty of candor and truthfulness before the court, there is no incentive to provide inaccurate information within a corporate disclosure statement filed with a court. *See Figgie Int'l*, 994 F.2d at 608

---

[8] *See* Exhibit A to the Declaration of Astor H.L. Heaven ("Heaven Decl.") for a list of the relevant corporate disclosure statements.

1  (factor weighing in favor of trustworthiness is the fact that declarants had no motive to lie).

2      Indeed, this bears out in practice as corporate disclosure statements regarding a particular

3  corporate entity, and filed in different courts, in different cases, and by different attorneys,

4  routinely include identical information on the corporate structure of the relevant corporate entity.

5  *See Larez v. City of Los Angeles*, 946 F.2d 630, 643 n.6 (9th Cir. 1991) (out-of-court statements

6  were "especially reliable" because they corroborated one another).[9]

7      Second, these corporate disclosure statements will serve as evidence for a material fact in

8  this case. The ownership percentages held by corporate entities in related corporate entities are

9  central to the ownership and control analysis under *In Re ATM Fee Antitrust Litig.*, 686 F.3d 741

10  (9th Cir. 2012). Put differently, this information (i) directly contradicts Defendants' argument

11  that Plaintiffs do not have standing to bring their claims against certain Defendants and (ii)

12  supports Plaintiffs' damages claims in this case.

13      Third, "reasonable efforts" will not produce evidence that is more probative than the

14  actual corporate disclosure statements. Plaintiffs could attempt to subpoena individuals to testify

15  to the authenticity of each of the corporate disclosure statements filed in other cases, but even

16  assuming that the various individuals are subject to the Court's subpoena power, which they may

17  not be, this would be an inefficient use of limited trial time, and would not result in testimony that

18  is any more trustworthy than the corporate disclosure statements themselves. *See Figgie Int'l,*

19  994 F.2d at 609 (holding that testimony from various letter writers would not be any more reliable

20  than admitting the letters themselves); *Flow Control Indus. Inc. v. AMHI Inc.*, 278 F. Supp. 2d

21  1193, 1197 (W.D. Wash. 2003) ("bringing each complainant into court to testify, under oath, that

22  their statements were true would be an unreasonable exercise and would not necessarily result in

23  testimony that is any more trustworthy than the complaints themselves" ). The corporate

24

25  [9] For example, Toshiba filed corporate disclosure statements in various courts, including this
   Court, in which it consistently identified Toshiba America, Inc. and Toshiba America Information

26  Systems, Inc. as wholly-owned subsidiaries of Toshiba Corporation. *Compare* Ex. B *and* Ex. C
   *with* Ex. D to the Heaven Declaration. Mitsubishi Digital Electronics America also filed
   corporate disclosure statements in various courts noting that Mitsubishi Digital Electronics

27  America is a wholly-owned subsidiary of Mitsubishi Electric Corporation. *Compare* Ex. E *and*
   Ex. F *with* Ex. G.

28

disclosure statements are the most probative evidence available regarding the corporate structure of various co-conspirators and Defendants in this case.

Fourth, admitting the corporate disclosure statements will serve the "paramount goal of making relevant evidence admissible," while also "further[ing] the interests of justice." *Figgie Int'l,* 994 F.2d at 609. As described above, the corporate relationships clearly depicted in each disclosure contradict Defendants arguments regarding Plaintiffs' standing and support Plaintiffs' damages claims.

Finally, Defendants have been on notice of Plaintiffs' intent to use the corporate disclosure statements at trial. The corporate disclosure statements were included in Plaintiffs' Joint Initial Exhibit List served on May 21, 2013, and Defendants have already had well over a month to prepare to meet this evidence. And given the July 22, 2013 trial date, Defendants have yet another month to prepare. For these reasons, the corporate disclosure statements should be admitted.

**8. Motion to Exclude Evidence, Reference or Argument Regarding Eric Korman and Dell's Alleged Knowledge of Defendants' Conspiracy.**

Defendants have designated substantial evidence about Dell's former Director of Supplier Development, Eric Korman, including purported evidence that Mr. Korman had access to Crystal Meeting minutes and regularly communicated with cartel members, and that Dell charged Mr. Korman with monitoring the conspiracy so Dell could benefit from it.

None of this is remotely admissible. This is simply a transparent attempt to create a sideshow in order to distract from Defendants' admitted price fixing in this action. Putting aside that Mr. Korman's testimony is tainted and unreliable, no evidence links Mr. Korman or Dell to Plaintiffs. Indeed, Dell did not even start selling any LCD products to retailers until well after the conspiracy period. A short recitation of the facts regarding Mr. Korman establishes that his testimony must be excluded under virtually every Rule 403 basis, including on grounds that it will mislead the jury and cause undue prejudice, issue confusion and undue consumption of time.

As the Court may recall from the *Dell* matter, Mr. Korman generated significant and protracted motion practice between Dell and Defendants. For example, in their Motion for

Plaintiffs' Motions *In Limine* (Nos. 1 - 21)                 Master File No. M07-1827 SI
                                                 Individual Files 10-CV-4572; 10-CV-5452; 10-CV-4945; 12-CV-4114
                                                 14

83947821.6

Summary Judgment Dismissing Dell's Pre-December 2002 Claims as Time Barred ("Limitations

Motion"), Defendants argued as follows:

> By the summer of 2001, Eric Korman, Dell's Director of Engineering and Supplier Development Director on Dell's TFT-LCD procurement team, learned directly from [a conspirator][10] that it was in fact meeting with [a conspirator] and other suppliers to … And by September 2001, he had learned – again from LCD suppliers themselves – that certain TFT-LCD suppliers were holding multi-lateral meetings – later known as the "Crystal meetings" – to "exchange market information, including information about supply and demand trends, and in efforts to agree upon pricing of TFT-LCD panels." A month later, in October 2001, [a conspirator] showed Mr. Korman *notes* from a Crystal meeting ….
>
> Mr. Korman did not withhold this information that appeared to confirm their suspicions of a "cartel" from his colleagues and supervisors. To the contrary, he reported it widely within Dell. *Id.* at ¶¶ 2, 20. He directly discussed these bilateral supplier meetings he was informed about with Dell Procurement Director Gerry Smith. Indeed, the record shows that over the years, Mr. Korman sent numerous emails regarding the "cartel," ***including reports of seeing "cartel meeting minutes."***

Dkt. No. 5847 at p. 4:18-5:8 [emphasis in original]. Defendants further argued that:

> But Mr. Korman's communications did not impel Dell to try to stop what it now calls a "secret conspiracy."[...] Korman was even assigned to travel to Taiwan for Dell and to continue monitoring the "cartel" from there.
>
> Altogether, Mr. Korman would see or receive from his supplier contacts notes from these "cartel" meetings on around eight separate occasions. He was regularly informed directly about what occurred at and who participated in the Crystal meetings from employees of [conspirators]. Mr. Korman showed notes from the "cartel" meetings to Procurement Director Smith and, at Mr. Smith's direction, flew to Texas to show them to Sr. VP Neland.
>
> Information regarding this "cartel" reached the highest levels within Dell. Senior VP Neland testified that he informed Dell CEO Kevin Rollins about suspected TFT-LCD cartel activity ***more than 20 times***.

*Id.*, at 6:5-20 [emphasis in original].

---

[10] Because this motion may not be filed under seal pursuant to the Court's Pretrial Instructions, Plaintiffs, in conformance with to the Protective Order (Dkt. No. 421) have redacted certain nonpublic portions of Defendants' motion.

The Court may recall that Mr. Korman was also the subject of Dell's Motion for Sanctions. In that Motion, Dell outlined in detail the unsavory circumstances leading up to Defendants' retention of Mr. Korman, including extravagant dinners, a case of champagne brought to him by AUO's counsel in a suitcase, and Mr. Korman's total memory loss during his deposition. Dkt. No. 6820, at p. 8-10. As Dell stated in its Motion:

> Mr. Korman sent a series of emails marked "ATTORNEY CLIENT PRIVILEGED" describing his contacts with multiple current and former Dell employees to attempt to enlist them to help AUO's cause, and he asked Mr. Blumenstein whether he has "any more 'home work'" for him.

> * * *

> Correspondence between Mr. Korman and Mr. Blumenstein demonstrates that the declaration was edited through December 13, 2011, **but was backdated five days to December 8, 2011**… Mr. Korman's declaration falsely states that he is a "neutral party" interested only in "justice being served."

> On January 1, 2012, Mr. Korman emailed Mr. Blumenstein and wrote that he "**[h]ope[s] that all is well and that 2012 is the year of liberation of your clients**." Mr. Blumenstein responded with attempts to set up a meeting.

> * * *

> In mid-February 2012, Mr. Blumenstein set up another dinner meeting with Mr. Korman in Taipei, and Mr. Korman asked Mr. Blumenstein what wine he would prefer: "Champagne, Red, White, or all of the above? [smiley face]."

> * * *

> Mr. Korman reviewed the Second Declaration and asked why certain things were not included, among them that "[t]he suppliers referenced meetings at the Howard Plaza hotel (**My suggestions since Dell and other large OEMS did not stay there) [smiley]**…" and that with regard to the Declaration, because of "**large amounts of alcohol, etc. I may have a hard time being precise on the stand in a cross-examination about LG meetings, etc.**"

> * * *

> Mr. Korman's 2010 emails showed him working for AUO to recruit Dell witnesses to help AUO's case, and asking Mr. Blumenstein for more "home work." Moreover, there is evidence Mr. Korman considered counsel for AUO to be his attorney too, because he marked communications with counsel for AUO "attorney-client privileged."

> Mr. Korman emailed Mr. Blumenstein his own ideas about themes and arguments to make in response to Dell's case.
>
> * * *
>
> Mr. Korman advertised his anti-Dell/pro-AUO bias to Mr. Blumenstein. Ex. 35 ("I do not want to appear uncooperative or anti-Dell." (emphasis added)) (AU-MDL-09604108); Ex. 38 ("Hope that all is well and that 2012 is the year of **liberation for your clients**." (emphasis added)) (AU-MDL-09604126); Ex. 42 (emailing ideas about material to include in his Second Declaration) (AU-MDL-09604165).

Dkt. No. 6820, at p. 8-12 [internal citations omitted] [emphasis in original].

Further, although Mr. Korman had extensive dealings with Defendants' counsel over a protracted period of time, and was essentially acting as their consultant, "[w]hen Mr. Korman was examined at his deposition by Dell's counsel, Mr. Korman suffered from complete and total memory failure. Incredibly, he swore under oath that he could not remember a single substantive detail of what was discussed during any of his years of meetings with counsel for AUO." *Id.*, at p. 11:9:13; *see also* Dkt. No. 6958, p. 4:2-6 (Dell's Supplemental Brief in Opposition to Defendants' Limitations Motion).

In spite of the foregoing, Defendants wish to call Mr. Korman presumably to suggest to the jury that Plaintiffs must have somehow known about the conspiracy because of Mr. Korman's alleged access to Crystal Meeting documents. Mr. Korman's testimony is irrelevant and unduly prejudicial. Evidence or argument regarding Mr. Korman would cause substantial delay and necessitate undue consumption of time, including the examination of Mr. Korman on his history at Dell, the circumstances under which Defendants secured his testimony, and the chronic inconsistencies between his sworn declaration and sworn deposition testimony. Defendants' proposed sideshow is particularly improper given the number of relevant issues that will be at issue at trial, and the limited amount of time available to present them. For these reasons, the Court should prohibit Defendants from attempting to introduce any evidence and making any commentary whatsoever regarding or relating to Mr. Korman and Dell's supposed knowledge of Defendants' conspiracy.

**9. Motion to Exclude Evidence Related to Best Buy's Alleged Knowledge of The Conspiracy from Use Against Kodak and The Target Plaintiffs.**

Kodak and the Target Plaintiffs anticipate that Defendants may try to introduce documents and testimony purporting to show that Best Buy may have been aware of Defendants' illegal conspiracy before the Department of Justice announced its investigation in December 2006. Kodak and the Target Plaintiffs request that the Court exclude that evidence.

The Court may recall that Best Buy's employee, Kevin Winneroski, met with personnel from Toshiba America Information Systems ("TAIS") in May 2003 regarding Best Buy's procurement of laptops ahead of the back-to-school season. After the meeting Mr. Winneroski reported in a memo to TAIS that:

> Panels are a spotty issue—not necessarily any real shortages, likely more of an issue of the "panel cartel" conspiring to keep supply down to drive prices up. Real issue is hard drives—IBM exited the business two months ago selling out to Hitachi and Toshiba as main suppliers. Hitachi has been unable to ramp up demand—serious ongoing issue.[11]

This evidence is patently irrelevant as to the Kodak and the Target Plaintiffs and is also potentially extremely damaging. Evidence as to whether an unrelated plaintiff knew about Defendants' conspiracy does not tend to make any fact at issue in this case involving Kodak or the Target Plaintiffs more or less probable than it would be without such evidence. *See* Fed. R. Evid. 401(a). Moreover, information as whether or what Best Buy knew about Defendants' conspiracy bears no weight or consequence in determining whether Defendants conspired to fix prices of TFT-LCD panels and products and whether these Plaintiffs—as opposed to other entities—were injured as a result. Fed. R. Evid. 401(b). Best Buy's purported knowledge, which is unrelated to Kodak and the Target Plaintiffs, regarding Defendants' conspiracy, or its reaction to the conspiracy, says nothing about what Kodak and the Target Plaintiffs knew.

Even if such evidence were relevant, it should be excluded pursuant to Federal Rule of Evidence 403 as its "its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, [or] misleading the jury." Fed R. Evid. 403. Defendants should

---

[11] Deposition of Winneroski, Ex. 80.

Plaintiffs' Motions *In Limine* (Nos. 1 - 21)
Master File No. M07-1827 SI
Individual Files 10-CV-4572; 10-CV-5452; 10-CV-4945; 12-CV-4114
18

83947821.6

not be allowed to confuse the jury with irrelevant information. *See United States v. Khan*, 508 F.3d 413, 417 (7th Cir. 2007) (questioning on marriage fraud was likely to confuse the jury regarding the main issues in the case).

**B.      MOTIONS *IN LIMINE* PREVIOUSLY <u>GRANTED</u> BY THE COURT**

**10.      Motion to Exclude References to, And Evidence of the Ability of Plaintiffs to Seek Treble Damages And Attorneys' Fees And Costs.**

Plaintiffs move to exclude introduction of any evidence at trial regarding Plaintiffs' ability to recover treble damages or attorneys' fees and costs. Such evidence is irrelevant, would improperly interfere with the jury's fact-finding role, and would unfairly prejudice the Plaintiffs.[12]

Plaintiffs' entitlement to treble damages is inadmissible in a jury trial. *See, e.g., Brooks v. Cook*, 938 F.2d 1048, 1052 (9th Cir. 1991) ("An instruction informing the jury of the trebling provision 'is an invitation to the jury to negate Congress' determination that actual damages should be trebled in order to deter antitrust violations and encourage private enforcement of the antitrust laws.'") (citation omitted); *In re Tableware Antitrust Litig.*, No. C-04-3514 VRW, 2007 WL 781960, at *3 (N.D. Cal. March 13, 2007) ("In antitrust actions, 'courts have uniformly concluded that mentioning treble damages and attorney fees to the jury is improper.'") (quoting *HBE Leasing Corp. v. Frank*, 22 F.3d 41 (2d Cir. 1994)) (internal brackets omitted); *In re Static Random Access Memory (SRAM) Antitrust Litig.*, No. 07-md-1819 CW (N.D. Cal.) (Dec. 16, 2010), Order on Motions *In Limine* and for Pre-Trial Preparation, at *6 (Dkt. No. 1206) ("*SRAM* MIL Order").

Likewise, the jury should not be informed of Plaintiffs' potential right to receive attorneys' fees. *See Brooks*, 938 F.2d at 1048 ("[i]n a case where the plaintiff is entitled to compensatory damages, informing the jury of the plaintiff's potential right to receive attorneys'

---

[12] Plaintiff Kmart joins this motion to the extent evidence regarding treble damages is irrelevant to Kmart's direct purchase claims under the Sherman Act and its indirect purchase claims under California law. As to its Michigan state law claims, however, Kmart will establish at trial that Defendants' violations are "flagrant" pursuant to Mich. Comp. Laws. Ann. 445.778, and Kmart does not move herein to exclude evidence regarding Kmart's ability to recover treble damages for its Michigan claims only.

1  fees might lead the jury to offset the fees by reducing the damage award."); *HBE Leasing Corp. v.*

2  *Frank*, 22 F.3d 41, 45-46 (2d Cir. 1994) (collecting case law and holding "[i]n that context [of

3  antitrust violations] as well, courts have uniformly concluded that mentioning treble damages and

4  attorneys' fees to the jury is improper.").

5  In the DPP Class Action Case, this Court granted a similar motion.  Order dated 5/4/12

6  (Dkt. No. 5597, p. 4, No. 1).

7  **11.  Motion to Exclude References or Arguments Regarding Other Actions and**

8  **Settlements in this MDL.**

9  Plaintiffs understand that Defendants intend to attempt to introduce at trial evidence that

10  other plaintiffs brought representative class and individual actions against Defendants, and that

11  those plaintiffs settled some or all of those actions.    Except for evidence regarding the fact of the

12  Indirect Purchaser Plaintiff Class, which the Court has already found relevant,[13] this evidence is

13  generally irrelevant and presents the risk of unfair prejudice.  In addition, Defendants should be

14  precluded from putting before the jury evidence of Plaintiffs' prior settlements since they, too, are

15  irrelevant and unfairly prejudicial.  As such, Plaintiffs move for an *in limine* order prohibiting

16  Defendants from referencing or attempting to rely upon or introduce such evidence.[14]

17  As the Court is aware, other Plaintiffs such as Dell, Nokia, Motorola, Hewlett Packard,

18  and others, brought their own opt out actions against the Defendants that were consolidated in this

19  MDL.  In their trial witness and exhibit lists, Defendants identified over 500 documents and 30

20  witnesses of other opt-out plaintiffs such as Dell, Nokia, Motorola, Hewlett-Packard and others.

21  Most, if not all, of the evidence Defendants seek to introduce regarding these other plaintiffs is

22  irrelevant to the claims and defenses in this case, and Plaintiffs have objected to the introduction

23  ───────────────

24  [13] In its Order Granting in Part and Denying in Part Parties' Motions to Exclude Expert
Testimony, the Court ruled that Best Buy's expert Dr. Alan Frankel may properly rely on the
opinions rendered by Defendants' expert Dr. Stephen Hoch, and may properly note that Dr. Hoch

25  was formerly retained by Defendants in the IPP action.  *See* Dkt. 8102, at pgs. 6-7.

26  [14] In the DPP Class Action, the court "Granted, absent further Court order on offer of proof
relevance" a motion to exclude evidence of other LCD actions.  Dkt. No. 5597, p. 4, No. 7.

27  Further, the Court granted the DPPs' Motion "as to the amount or terms of and settlement," but
denied it "as to the fact of settlement by testifying witness or by corporate employer of testifying

28  witness."  Dkt. No. 5597, p. 4, Nos. 2 & 3.

Plaintiffs' Motions *In Limine* (Nos. 1 - 21)                                    Master File No. M07-1827 SI
Individual Files 10-CV-4572; 10-CV-5452; 10-CV-4945; 12-CV-4114
20

83947821.6

of that evidence.  For the purposes of the present motion, however, Plaintiffs seek an order

excluding evidence or argument that would inform the jury that these other plaintiffs brought

their own antitrust actions to pursue their individual claims against Defendants separate and apart

from the Plaintiffs in this trial.

Plaintiffs' right to proceed separately against Defendants is fundamental, and may not be

foreclosed or impaired by the fact that other plaintiffs have also asserted claims against

Defendants or previously prevailed against Defendants in earlier litigations.  *See, e.g., Phillips*

*Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985) ("due process requires at a minimum that an

absent plaintiff be provided with an opportunity to remove himself from the class"); *Tinius v.*

*Carroll County Sheriff Dept.*, No. C03-3001-MWB, 2004 WL 3103962 at *2 (N.D. Iowa Dec. 22,

2004) (ruling that evidence as to former parties was "irrelevant to the issues involved in this case"

and that defendants were "precluded from discussing or making any reference to the fact that

parties have been dismissed from this case"); *United States ex rel. Evergreen Pipeline Constr.*

*Co., Inc. v. Merritt-Meridian Constr. Corp.*, 90 Civ. 5106 (DC), 1994 WL 577637 at *1

(S.D.N.Y. Oct. 19, 1994) (referring to the court's granting of the motion *in limine* barring

"evidence relating to previously dismissed parties or causes of action").[15]

Courts have routinely excluded from evidence on *in limine* motions references to other

pending civil cases arising from a common or related course of conduct or governmental

investigations related to an instant dispute. *See, e.g., SRAM* MIL Order, p. 7 (granting the

plaintiffs' motion "to exclude evidence of class members who opted out of the action or settled

separately. . . ."); *Johnson v. Ford Motor Co.,* 988 F.2d 573, 579-80 (5th Cir. 1993) (citing

---

[15] *See also Contemporary Mission, Inc. v. Bonded Mailings, Inc.*, 671 F.2d 81, 84 (2d Cir. 1982)
(holding trial court properly excluded testimony regarding other litigation against defendant
because evidence was cumulative, potentially extensive, and not sufficiently probative on the
issue of the extent of the plaintiff's damages to justify inclusion); *Kinan v. Brockton*, 876 F.2d
1029, 1034 (1st Cir. 1989) (affirming trial court's exclusion of evidence of two other lawsuits
against defendants, noting "confusion and consumption of a great deal of unnecessary time"
which would have "inevitably" arisen had evidence of lawsuits been introduced since "the two
other cases would have become inextricably intertwined with the case at bar" as "at least
portions" of the cases became known to the jury); [Jack B. Weinstein, et al., Weinstein's Federal
Evidence, § 403.05[3][a]](Joseph M. McLaughlin, ed., Matthew Bender 2d Ed. 2011)] (noting
"[c]ourts are reluctant to cloud the issues in the case at trial by admitting evidence relating to
previous litigation involving one or both of the same parties").

1    *Roberts v. Harnischfeger Corp.*, 901 F.2d 42, 44-45 (5th Cir. 1989)) (upholding exclusion of

2    other lawsuits against Ford Motor Co. involving allegedly defective vehicles); *Lee v. National*

3    *R.R. Passenger Corp.*, No. 3:10–CV–00392–CWR–LRA, 2012 WL 130267 at *3 (S.D. Miss. Jan.

4    17, 2012) (excluding evidence of other lawsuits arising out of same crash); *Ilano v. H&R Block*

5    *Eastern Enterprises*, No. 09–22531–CIV, 2011 WL 1897431 at *1 (S.D. Fla. May 11, 2011)

6    (excluding evidence of other lawsuits against H&R Block) (citing *Palmer v. Board of Regents of*

7    *Univ. Sys. of Ga.*, 208 F.3d 969, 972-73 (11th Cir. 2008)). [16]

8         The same result is warranted here.  Allowing reference to other claims and actions brought

9    against Defendants creates a serious risk of unfair prejudice, including the risk that the jury,

10   consciously or subconsciously, might reduce the damages awarded to the Plaintiffs because of a

11   belief that the latter were able to compensate for these overcharges by passing them on to others,

12   who, in turn, could seek compensation from Defendants.  Evidence that a plaintiff has been

13   compensated for his or her alleged injuries through another source is especially prejudicial.[17]

14   And while Defendants argued in opposition to the Direct Purchaser Class Motion *In Limine* No. 9

15   (Dkt. No. 6013) that such evidence was relevant to prevent the class plaintiffs from arguing that

16   the class damages included the purchases of opt out plaintiffs (Dkt. No. 5239 at p. 8), no such

17   reasoning applies here where the Plaintiffs are pursuing only their own opt-out damages.

18         Evidence of prior settlements should be excluded because there is a risk that a jury could

19   improperly reduce its damages award because of its belief that the plaintiff has already been

20   _____

21   [16] *Robinson v. Hartzell Propeller, Inc.*, Civ. No. 01- 5420, 2008 WL 4679248 at *3 (E.D. Pa. Aug. 11, 2008) (conditionally granting motion to exclude references to other lawsuits arising from the same accident); *Acands, Inc. v. AON Risk Services,* Civ. A. No. 01-3277, 2004 WL

22   2601035 at *2 n. 3 (E.D. Pa. Nov. 10, 2004) (excluding evidence of related AG investigation); *Blue Cross & Blue Shield of N.J., Inc., v. Philip Morris, Inc.*, No. 98 CV 3287(JBW), 2000 WL

23   1805359 at *2 (E.D.N.Y. Dec. 11, 2000) (excluding evidence of other lawsuits and governmental investigations relating to hazards of the smoking of cigarettes).

24   [17] *Eichel v. N.Y. Central R.R.* 375 U.S. 253, 255 (1963) (per curiam) (noting "evidence of

25   collateral benefits" received by plaintiffs mitigating their injuries "is readily susceptible to misuse by a jury" and affirming trial court's exclusion of evidence of disability benefits offered to show

26   mitigation of plaintiff's damages); *Green v. Denver & Rio Grande W. R.R. Co.,* 59 F.3d 1029, 1033 (10th Cir. 1995) (upholding trial court's order barring evidence that plaintiff received

27   disability benefits on the ground that "the prejudicial effect of the evidence outweighs its probative value" because the jury "might be more likely to find no liability if they know that

28   plaintiff has already received some compensation" for injuries).

1    compensated.  *Young v. Verson Allsteel Press Co.*, 539 F. Supp. 193, 195-96 (E.D. Pa. 1982);

2    *Gribben v. United Parcel Serv., Inc.*, 528 F.3d 1166, 1172 (9th Cir. 2008) (affirming trial court's

3    exclusion of consent decree entered into as part of a "no-fault" settlement because "it was

4    irrelevant and would have been unduly prejudicial, confusing, and misleading"); *Ross*, 2012 WL

5    2004810, at *4 ("Evidence of settlement negotiations can also be viewed as a concession of

6    liability, which is unfairly prejudicial for the same reasons as those underlying Fed. R. Rule

7    408.").

8         Further, Plaintiffs' settlements are confidential under Rule 408, have no probative value

9    under Federal Rule of Evidence 401 and are, therefore, inadmissible under Rule 402.  *Id.*; *see also*

10   Fed. R. Evid. 408, 1972 Advisory Committee's Notes; *Green v. Baca*, 226 F.R.D. 624, 640 (C.D.

11   Cal. 2005); *Playboy Enters. Inc. v. Chuckleberry Pub. Inc*., 486 F. Supp. 414, 423 n.10 (S.D.N.Y.

12   1980).

13        Introduction of this evidence may cause further juror confusion by leading the jury to

14   speculate that the "guilty" parties have settled and only the "innocent" defendants remain in the

15   case.  Defendants should not be allowed to make that argument because the fact of settlement

16   proves nothing regarding culpability.  And, absent some basis for a finding that a settlement

17   would cause a witness to testify untruthfully, the prior settlement are irrelevant to witness

18   credibility.  *Myers v. Pennzoil Co*., 889 F.2d 1457, 1460-62 (5th Cir. 1989); *Quad/Graphics Inc.*

19   *v. Fass*, 724 F.2d 1230, 1235 (7th Cir. 1983).  Evidence of any prior settlements should therefore

20   be excluded.  *See In re Homestore.com, Inc.*, Master File No. Civ. 01-11115 RSWL (CWx), 2011

21   WL 291176, at *1 (C.D. Cal. Jan. 25, 2011) (excluding "reference to or evidence of amount of

22   settlement with previous defendants"); *SRAM* MIL Order, at *7 (excluding references to prior

23   settlements and their amounts).

24        In the DPP Class Action, the Court granted in part the DPP and IPP class plaintiffs motion

25   to exclude references to the class settlements holding that the motion was "GRANTED as to the

26   amount or terms of any settlement; DENIED as to fact of settlement by testifying witness or by

27   corporate employer of testifying witness."  Dkt. No. 5597, p. 4, No. 2/3.  And, although the Court

28   previously denied a similar motion to exclude references to other actions in the DPP Class

Plaintiffs' Motions *In Limine* (Nos. 1 - 21)                    Master File No. M07-1827 SI
                                          Individual Files 10-CV-4572; 10-CV-5452; 10-CV-4945; 12-CV-4114
                                                          23

83947821.6

Action, where the size of the class—including the extent to which larger plaintiffs had opted-out—was potentially relevant to damages, the Court did so "without prejudice to specific objection to specific testimony at trial." Dkt. No. 5597, p. 4, No. 9. This rationale for admission is no longer a valid argument because Plaintiffs are asserting individual claims. Further, as the DPP and IPP Class Actions have now been resolved, along with several other opt-out claims reference to these claims provides a greater likelihood of unfair prejudice. As such, an order excluding references to those actions, settlements in connection with those actions, or issues unique to those actions (as set forth above), is appropriate at this time.

**12.    Motion to Exclude References to the Current Financial Condition of Any of the Named Plaintiffs. [*Brought By All Plaintiffs Except Kodak.*]**

Plaintiffs anticipate that Defendants may attempt to offer argument or evidence at trial about Plaintiffs' current financial condition. However, Plaintiffs' financial condition is irrelevant to whether Defendants conspired to fix prices of TFT-LCD panels and products and whether Plaintiffs were injured as a result. *Sanderson v. Winner*, 507 F.2d 477, 479 (10th Cir. 1974); *In re Homestore*, 2011 WL 291176 at *1 ("Evidence of a party's financial condition is generally not relevant and can be unduly prejudicial, as it can distract the jury from the real issues in the case."); *In re West Coast Dept. Stores Antitrust Litig.*, Civil No. C-79-2724 SW, 1979 WL 1721 at *1 (N.D. Cal. Nov. 16, 1979).

In the DPP Class Action, the Court considered a similar motion and pursuant to Order dated 5/4/12 (Dkt. No. 5597, p. 4, No. 6), ruled as follows: "Granted, absent further Court order on offer of proof relevance."

**13.    Motion to Exclude References to Statements Made by Department of Justice Officials Regarding Multiple Conspiracies.**

Plaintiffs anticipate that the Defendants may offer into evidence, or refer to, a statement made by Assistant Attorney General of the Antitrust Division Thomas O. Barnett, at a press conference on November 12, 2008. At that press conference, Mr. Barnett said that the Government had concluded that there were "several distinct conspiracies" at work in the LCD

Panel Market.[18] Plaintiffs further anticipate that Defendants may offer into evidence, or refer to, statements made by a Trial Attorney in the Antitrust Division, David Ward on May 22, 2009, as part of the criminal case against Hitachi. At that hearing, Mr. Ward stated:

> We believe there was a larger conspiracy involving LG and CPT and others to fix the prices of TFT-LCD sold to many manufacturers. The Government does not believe that either Sharp or Hitachi were involved in that conspiracy. We believe that Hitachi, Sharp and other unnamed coconspirators were involved in a separate conspiracy amongst themselves to fix the prices of TFT-LCD sold only to Dell. So they're related conspiracies, but they're not the same conspiracies.[19]

Those statements were not under oath and in both instances, Mr. Barnett and Mr. Ward were speaking as lawyers for the Government, not as witnesses with knowledge of facts. Accordingly, those statements are not admissible under Federal Rule of Evidence 602. *See Muldrow v. Re-Direct, Inc.*, 493 F.3d 160, 167 (D.C. Cir. 2007). In addition, Plaintiffs are not bound by the Government's theory of its case. *In re TFT-LCD*, 267 F.R.D. at 607; *In re Vitamins Antitrust Litig.*, 2000 WL 1475705, at *11 (D.D.C. May 9, 2000) ("The antitrust statutes expressly recognize that private plaintiffs may allege a conspiracy different in some respects from the conspiracy previously alleged by the government.").

For these reasons, the Court should exclude any references to statements made by the government attorneys that attempt to characterize the nature or scope of the conspiracy at work in the LCD Panel market.

In the DPP Class Action, the Court considered a similar motion and pursuant to Order dated 5/4/12 (Dkt. No. 5597, p. 4, No. 11), ruled as follows: "Granted." For the same reasons, the requested motion should be granted.

---

[18] See Exhibit 1 to the Declaration of Jacob R. Sorenson In Support of Defendants' Joint Opposition to Direct Purchaser Plaintiffs' Motion for Class Certification, dated July 1, 2009 ("Sorenson Decl.") (Dkt. No. 1078).

[19] See Exhibit 2 to Sorenson Decl. (Dkt. No. 1078).

14.     **Motion to Exclude Any Reference to The Department of Justice's Rule 12.4 Disclosures in The Related Criminal Actions.**

In the DPP/IPP Class Actions, the Toshiba Defendants argued that they did not participate in, but rather were the "victims" of, the TFT-LCD conspiracy. (Dkt No. 3575, at pp. *2, 5.) Toshiba Defendants argued that the Rule 12.4 disclosures filed by the DOJ in the related criminal action, *United States v. LG Display Co., Ltd.* "acknowledged" the Toshiba Defendants' victimhood: "[T]he Department of Justice specifically recognized that Toshiba was a victim of the Crystal Meeting conspiracy." *Id.* at *2 (citing Disclosure Stmt., *United States v. LG Display Co., Ltd.*, No. CR 08-0803 SI, Attachment A at *4 (N.D. Cal. Dec. 10, 2008), Dkt No. 756. In their response, Plaintiffs pointed out that Toshiba Defendants could not rely on the Department of Justice's Rule 12.4 disclosures to claim that they were "victims" of the conspiracy, among other things, because "[t]he DOJ has . . .been very careful not to characterize Toshiba as a victim." Plaintiffs' Opposition to Toshiba Entities Motion for Partial Summary Judgment Under *Illinois Brick* (Dkt. No. 3792, at *8-9) (filed under seal).[20]

In its November 7, 2011 order denying the Toshiba Defendants' motion for partial summary judgment under *Illinois Brick*, the Court rejected the Toshiba Defendants' arguments, holding that Direct Purchaser Plaintiffs' "evidence, set forth in its opposition to Toshiba's summary judgment motion on the issue of its participation in the conspiracy, is sufficient for a jury to find that Toshiba Corporation was involved in the conspiracy." In re TFT-LCD (Flat Panel) Antitrust Litig., MDL No. 1827, 2011 WL 5357906, at *2 (N.D. Cal. Nov. 7, 2011).

Defendants should not be allowed to reference or offer into evidence the DOJ's Rule 12.4 disclosures. Those disclosures are irrelevant and would be unduly prejudicial to Plaintiffs for

---

[20] For example, the DOJ's Rule 12.4 disclosures were made "to aid the Court in determining whether recusal is appropriate," and not for the purpose of making an express finding of nonculpability for the Toshiba Defendants. Also, contrary to Toshiba Defendants' representations in their summary judgment brief, the DOJ's disclosures do not expressly mention the "Crystal Meetings," and purport only to list the "top customers who purchased certain liquid crystal displays during the conspiracy." Attachment A to the disclosures also lists only "Toshiba" as a "top customer," and makes no attempt to identify which particular Toshiba entity was a customer. In any event, whether or not the DOJ considers "Toshiba" a victim of defendants' conspiracy is simply irrelevant to the issues to be decided at trial.

exactly the same reasons that it would be irrelevant and unduly prejudicial to allow Defendants to

invoke as a "defense" DOJ's failure to indict the Toshiba entities. Moreover, the disclosures are

inadmissible for the additional reason that government investigatory "findings" or "conclusions,"

if these even were such, are inadmissible in later actions involving the same or similar subject

matter.[21] Thus, the DOJ's disclosures should be excluded.

In the DPP Class Action, the Court considered a similar motion and pursuant to Order

dated 5/4/12 (Dkt. No. 5597, p. 4, No. 13), ruled as follows: "Granted."

### 15. Motion to Preclude Argument That Plaintiffs' Claims Are Barred Because They Arise from Foreign Commerce.

Defendants should be precluded from suggesting that Plaintiffs' claims are barred, in

whole or in part, because they include foreign commerce under the Foreign Trade Antitrust

Improvements Act of 1982 ("FTAIA").[22] Plaintiffs only seek to recover damages for Defendants'

unlawful overcharges on TFT-LCD panels and products billed or shipped to entities in the United

States. *See Carrier Corp. v. Outokumpu Oyj*, Nos. 07-6052, 07-6114, 2012 WL 678151 at *4 n. 3

(6th Cir. March 2, 2012) (FTAIA not implicated by claims for domestic purchases); *In re TFT-*

*LCD (Flat Panel) Antitrust Litig.*, No. M 07-1827 SI, 2011 WL 4634031 at *12-13 (N.D. Cal.

Oct. 5, 2011) (The FTAIA does not bar recovery for TFT-LCD products purchased domestically).

Neither Defendants nor their experts have ever claimed nor suggested that Plaintiffs' damage

calculations include foreign TFT-LCD panel purchases.

---

[21] *Black v. Ryder/P.I.E. Nationwide, Inc.*, 15 F.3d 573, 586-87 (6th Cir. 1994) (affirming district court's order precluding defendant from introducing at trial NLRB decision electing "not to issue a complaint" against the defendant because the "pertinent documents [we]re . . . probative of almost nothing." The documents, for example, did not "provide the factual basis for the NLRB's conclusion of insufficient evidence" and, if admitted at trial, the jury would have likely "assign[ed] greater value to th[e] decision than it [was] worth, given that it [was] the product only of an administrative investigation"); *Hynix*, 2008 WL 282376, at *4 (recognizing that "the FTC [liability] opinion might mislead the jury into treating the liability questions as one group issue" and concluding that "the probative value of the [FTC]'s opinion [was] substantially outweighed by the danger of prejudice and confusion of issues").

[22] The FTAIA removes from "the Sherman Act's reach . . . commercial activities taking place abroad, unless those activities adversely affect domestic commerce, imports to the United States, or exporting activities of one engaged in such activities within the United States." *Hoffmann-La Roche Ltd v. Empagran S.A.*, 542 U.S. 155, 158 (2004) (emphasis in original). See also *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2012 WL 506327, at *3 (N.D. Cal. Feb. 15, 2012) (FTAIA contains "domestic injury exception").

In the DPP Class Action, the Court considered a similar motion and pursuant to Order dated 5/4/12 (Dkt. No. 5597, p. 4, No. 15), ruled as follows: "Granted as to any such argument.  If to the extent that factual predicates must be established at trial re FTAIA issues, those will simply be submitted to the jury for determination."

**16.     Motion to Preclude Evidence Regarding "Pass-On" in Connection with Best Buy's and The Target Plaintiffs' Claims.**

Under the Clayton Act, antitrust plaintiffs are injured when they pay "money wrongfully induced," and their "damages are established by the amount of the overcharge." *Hawaii v. Standard Oil Co. of California*, 405 U.S. 251, 262 n. 14 (1972).  Thus, under Section 4 of the Clayton Act, "[c]ourts will not go beyond the fact of th[e] [overcharge] injury to determine whether the victim of the overcharge has partially recouped its loss in some other way." *Id.*; *see also S. Pacific Co. v. Darnell-Taenzer Lumber Co.*, 245 U.S. 531, 534 (1918) ("The plaintiffs suffered losses [in] the amount of the [overcharge] when they paid [it].  Their claim accrued at once in the theory of the law and it does not inquire into later events.  (citation omitted)").

As such, evidence that Best Buy or the Target Plaintiffs may have recouped Defendants' unlawful overcharges by, among other things, passing-on those overcharges to their customers, is legally irrelevant to the amount of damage they suffered under the Sherman Act.  *Hanover Shoe*, 392 U.S. at 494 (1968) (holding that antitrust defendants are prohibited from raising as a defense that plaintiffs passed-on or otherwise recouped all or some of defendants' overcharges by passing-on those overcharges to their customers); *Royal Printing Co. v. Kimberly-Clark Corp.*, 621 F.2d 323, 327 (9th Cir. 1980) ("*Royal Printing*") ("*Hanover Shoe* teaches that in . . . situations [where plaintiffs may have partially recouped an overcharge] there is nothing wrong with the plaintiff winning a windfall gain, so long as the antitrust laws are vindicated and the defendant does not suffer multiple liability."); *Meijer, Inc. v. Abbott Labs.*, 251 F.R.D. 431, 433 (N.D. Cal. 2008) ("[W]hen a seller overcharges a buyer . . . , the fact that the buyer raises the price for its own product, thereby passing on the overcharge to its customers and avoiding a loss in profit, has no bearing on the issue of whether the buyer has suffered an injury . . . . [D]amages are appropriate to the extent the buyer was overcharged, and must be measured

accordingly."); *Apple iPod iTunes Antitrust Litig.*, No. C 05-00037, 2011 WL 5864036, at *4

(N.D. Cal. Nov. 22, 2011) (in antitrust action, rejecting defendant's pass-on overcharge defense

on motion for class certification); *Braintree Labs. v. McKesson Corp.*, No. 11-80233, 2011 WL

5025096, at *3 (N.D. Cal. Oct. 20, 2011) ("[t]he Supreme Court has made it clear that in an

antitrust suit, a plaintiff's alleged benefit from a defendant's anti-competitive behavior because

the plaintiff 'passed on' any overcharge is not relevant to whether the plaintiff suffered a

cognizable antitrust injury." (citation omitted)).

The jury need only determine whether and to what extent Defendants overcharged

Plaintiffs, regardless of whether Plaintiffs were able to pass-on the overcharges to their customers

or otherwise recoup the overcharges. The Court also should preclude Defendants from indirectly

raising the pass-on defense by prohibiting Defendants from referring to or attempting to offer

evidence regarding the effect of Defendants' overcharges on Plaintiffs' businesses in connection

with Plaintiffs' Sherman Act claims. Such evidence would include evidence regarding Plaintiffs'

profitability, or the retail prices they set for TFT-LCDs. Like direct evidence of the passing on of

Defendants' overcharges, such indirect evidence is irrelevant, would confuse the issues and the

jury, and would invite the jury to improperly assume that Plaintiffs avoided any "actual" damages

by raising their prices in response to Defendants' overcharges.

In the DPP Class Action, the Court considered a similar motion and pursuant to Order

dated 5/4/12 (Dkt. No. 5597, p. 5, No. 16), ruled as follows: "Granted." In keeping with the

Court's previous ruling, Plaintiffs request that this motion be granted. Best Buy and the Target

Plaintiffs also request that the Court exclude evidence of pass-on with regard to their indirect

purchase claims but recognize, while preserving their objections, that the Court has previously

ruled that the Defendants may use the pass-on defense with regard to Plaintiffs' state law claims.

**17.     Motion to Exclude Evidence Regarding Plaintiffs' Alleged Failure to Mitigate
          Their Damages.**

Plaintiffs move the Court to exclude evidence purporting to show that Plaintiffs failed to

mitigate their damages. Not only has the Court previously granted a similar Motion *in Limine* to

Exclude Evidence Regarding Plaintiff's Failure to Mitigate Their Damages as filed in the DPP

1    and IPP Class Actions (Order dated 5/4/12 (Dkt. No. 5597, p. 5, No. 17), but the Court also

2    rejected Defendants' "mitigation of damages" defense in its "Order Denying Defendants' Motion

3    For Partial Summary Judgment Of Dell's Failure To Mitigate Damages." ("In the absence of any

4    on-point authority, the Court declines to hold that defendants may assert mitigation as a defense

5    to Dell's horizontal price-fixing claim." *Dell Inc. v. AU Optronics Corporation*, C 10-1064 SI,

6    Order dated 5/4/12 (Dkt. No. 7276). The Court rejected a similar motion brought by Defendants

7    in Best Buy's action (*Best Buy v. AU Optronics Corporation*, C 10-4572 SI) stating: "Defendants

8    advance similar arguments and authority that the Court recently found unpersuasive in denying

9    defendants' motion for partial summary judgment of Dell's failure to mitigate damages. Dkt. No.

10    7276. For the reasons set forth in that order, the Court declines to hold that defendants may assert

11    mitigation as a defense to Best Buy's horizontal price-fixing claim." Order dated 12/10/12 (Dkt.

12    No. 7317 at p. 3:8-13).

13        The "mitigation of damages" theory has been rejected in Sherman Act price fixing cases

14    as an improper attempt to limit damages to less than Defendants' illegal overcharges. *See, e.g.,*

15    *Hanover Shoe, Inc. v. United Shoe Machinery Corp.,* 392 U.S. 481, 489 (1968); *Royal Printing*

16    *Co. v. Kimberly-Clark Corp.*, 621 F.2d 323, 327 (9th Cir. 1980) (a price fixing plaintiff is

17    "allowed to recover its 'full' damages even though it 'mitigated' its damages by passing part of

18    the excessive costs to its customers."); *In re Airline Ticket Comm'n Antitrust Litig.*, 918 F. Supp.

19    283, 286-287 (D. Minn. 1996) (mitigation of damages defense may apply in failure to deal cases,

20    but "[i]n a horizontal price-fixing case, however, mitigation and offset generally do not affect the

21    ultimate measure of damages.")

22        In the DPP Class Action, the Court considered a similar motion and pursuant to Order

23    dated 5/4/12 (Dkt. No. 5597, p. 5, No. 17), ruled as follows: "Granted, absent further Court order

24    on offer of proof." *See also Dell Inc. v. AU Optronics Corporation*, C 10-1064 SI, Order dated

25    5/4/12 (Dkt. No. 7276) and *Best Buy v. AU Optronics Corporation*, C 10-4572 SI, Order dated

26    12/10/12 (Dkt. No. 7317 at p. 3:8-13 referenced above.

27

28

**18.** **Motion to Exclude Live Witnesses from Testifying in Defendants' Case-In-Chief Who Were Not Made Available for Live Testimony in Plaintiffs' Case-In-Chief.**

Many of Defendants' current and former employees, whom Defendants have designated as trial witnesses, are outside of the Court's subpoena power. Defendants control these witnesses and are bringing many of them to San Francisco to testify for Defendants.[23] Plaintiffs seek an order that any witnesses Defendants intend to bring to trial to testify live must be made available in Plaintiffs' case-in-chief to the extent that Plaintiffs seek to introduce their testimony.

The Court ruled in the previous case between the Direct Purchaser Plaintiff Class and Toshiba that the Toshiba witnesses brought live had to be made available in the plaintiffs' case-in-chief. Without such a ruling, Plaintiffs will have to present video testimony to the jury in their case in chief and then cross-examine these same witnesses after they testify during Defendants' case-in-chief. Doing so would unnecessarily prolong the trial and unnecessarily burden the Court and the jury with hearing duplicative evidence.

Having Defendants' key witnesses testify during Plaintiffs' case-in-chief will also eliminate any confusion which would otherwise result from the jury hearing these witnesses' deposition and then their live testimony. *Eolas Technologies, Inc. v. Microsoft Corp.,* 270 F. Supp.2d 997, 1001 (N.D. Ill. 2003) (granting motion *in Limine* requiring defendant to make employees available to testify during the plaintiff's case-in-chief); *ADC Telecomm, Inc. v. Switchcraft, Inc.,* No. 04-1590 PJS/RLE, 2007 WL 6347404 at *2 (D. Minn. Jan. 8, 2007) (ordering the defendant to make any witnesses defendant intended to call available to testify during the plaintiff's case-in-chief); *Mason v. Texaco, Inc.*, 741 F. Supp. 1472, 1504 (D. Kan. 1990) (requiring Texaco to produce employee for testimony in plaintiff's case-in-chief); *Applied Elastomerics, Inc. v. Z-Man Fishing Products, Inc.*, No. C 06-2469 CW, 2006 WL 2868971, at *5 (N.D. Cal. Oct. 6) ("[L]ive testimony is preferable to depositions."); *Geo. F. Martin Co. v. Royal*

---

[23] Defendants have disclosed to Plaintiffs a long list of people they may bring as live witnesses, including, for example, Stanley Park of LG Display. Defendants should be ordered to make these witnesses available in Plaintiffs' case-in-chief.

1  *Ins. Co. of Am.*, No. C03–5859 SI, 2004 WL 1125048, at *3 (N.D. Cal. May 14, 2004)

2  ("Whenever possible, live testimony is preferred."); *Amini Innovation Corp. v. JS Imports, Inc.,*

3  497 F. Supp.2d 1093, 1111 (C.D. Cal. 2007) ("The aim is to minimize the risk of 'trial by

4  deposition.'") And, requiring live testimony during Plaintiffs' case-in-chief will significantly

5  shorten and simplify the trial.[24]

6      Accordingly, Plaintiffs respectfully request that Plaintiffs be allowed to call Defendants'

7  live witnesses in Plaintiffs' case-in-chief and that Defendants be excluded from presenting the

8  testimony of any current or former employee whom Defendants fail to make available to testify

9  during Plaintiffs' case-in-chief.

10     In the DPP Class Action, the Court considered a similar motion and pursuant to Order

11  dated 5/4/12 (Dkt. No. 5597, p. 5, No. 21), ruled as follows: "Granted.  Any witnesses being

12  brought to trial by defendant for live testimony must be made available for testimony in plaintiffs'

13  case in chief.  However, the defense examination of any such witness will not be limited by the

14  scope of plaintiffs' direct.  (See Toshiba No. 1.)"

15      **19.    Motion to Exclude Percipient Witnesses, Except for A Party Representative,**

16          **from The Courtroom Unless Testifying.**

17     Plaintiffs ask that all percipient witnesses be excluded from the courtroom except for one

18  representative per party.  Fed. R. Evid. 615.  The "Federal Rules of Evidence . . .  require a

19  federal district court to exclude witnesses upon the motion of a party," *Larson v. Palmateer*, 515

20  F.3d 1057, 1065 (9th Cir. 2008), so that witnesses cannot tailor their accounts resulting in

21  "testimony that is less than candid." *Geders v. United States*, 425 U.S. 80, 87 (1976).  Plaintiffs

22  also request that the Court enter an order precluding percipient witnesses from reading transcripts

23  of the court proceedings or being advised of the testimony.  This prohibition should not extend to

24  expert witnesses, however.

25

26  _____

[24] *See Doan v. Astrue*, No. 04cv2039 J(RBB), 2008 WL 238454, at *2-3 (S.D. Cal. Jan. 29, 2008)
("it is appropriate to grant a motion in limine if it limits the waste of judicial resources.");

27  *Hewlett- Packard Co. v. Mustek Systems, Inc.,* No. 99–CV–351–RHW, 2001 WL 36166855, at *4
(S.D. Cal. June 11, 2001) (granting motion in limine which "promotes judicial economy and

28  efficiency by avoiding needless presentation of evidence.").

In the DPP Class Action, the Court considered a similar motion and pursuant to Order dated 5/4/12 (Dkt. No. 5597, p. 5, No. 23), ruled as follows: "Granted, except as to that party's designated representative."

**20.     Motion to Preclude Expert Witness Testimony on Incomplete Pass-On of Overcharges Through Affiliate Entities (*Royal Printing*).**

Plaintiffs' claims implicate corporate families in which parent company entities assert control over their subsidiaries and divisions. Based on these relationships, under *Royal Printing v. Kimberly Clark Corp.,* 621 F.2d 323, 327 (9th Cir. 1980), the Court should preclude expert witnesses from opining about the potential for incomplete pass-on of overcharges through Defendants' and their co-conspirators' corporate families.

*Royal Printing* permits an antitrust plaintiff to sue as a direct purchaser and seek an entire overcharge, even if the plaintiff purchased a manufacturer's product through a subsidiary or division of that manufacturer. *Id*. at 327. The Ninth Circuit reasoned that recovery of the entire overcharge was necessary because determining "what portion of the illegal overcharge was 'passed on' to [the plaintiff] and what part was absorbed by the middlemen would involve all the evidentiary and economic complexities that *Illinois Brick* clearly forbade." *Id*., citing *Illinois Brick*, 431 U.S. at 731-32, 737-45. Although permitting a plaintiff to recover the entire overcharge could result in a windfall recovery, the alternative under *Illinois Brick* was to bar all antitrust suits involving corporate parents and affiliates they controlled, which "would be intolerable." *Id*.

This Court has also held that "the Royal Printing exception applies" to sales by the Defendants. *In re TFT-LCD II*, 2011 WL 5357906, at *2. Thus, Plaintiffs are entitled to seek the entire overcharge that Defendants and their co-conspirators imposed for direct purchases.

Therefore, the Court should preclude any expert from opining about the potential incomplete pass-on of overcharges through Defendants' and their co-conspirators' corporate families, or criticizing Plaintiffs' calculation of damages based on 100% pass-through of the overcharge.

Plaintiffs' Motions *In Limine* (Nos. 1 - 21)                    Master File No. M07-1827 SI
Individual Files 10-CV-4572; 10-CV-5452; 10-CV-4945; 12-CV-4114
33

83947821.6

In the DPP Class Action Case, this Court considered a similar motion and pursuant to Order dated 5/4/12 (Dkt. No. 5597, p. 5-6, No. 26), ruled as follows: "Granted, absent further Court order on offer of proof demonstrating ownership and control."

## C. MOTIONS *IN LIMINE* PREVIOUSLY DENIED BY THE COURT

### 21. Motion to Admit Evidence That Certain Witnesses Have Invoked The Fifth Amendment Privilege Against Self-Incrimination.[25]

Plaintiffs request that the Court admit evidence that several witnesses, who are current or former employees, of the Defendants invoked their Fifth Amendment privilege against self-incrimination. Specifically, Plaintiffs seek an order admitting the fact that a former HannStar executive, a current AUO executive, and a former Toshiba executive pled the Fifth Amendment at their depositions.

A former senior executive of HannStar, who was indicted by the United States for his role in the conspiracy, was deposed on July 28, 2011 in Taiwan. At that deposition, he invoked his Fifth Amendment privilege and declined to answer any questions. HannStar now appears to intend to argue that either it did not participate in the conspiracy, despite its plea to the contrary, or that its participation is limited to a narrower time period than alleged by Plaintiffs. Plaintiffs should be allowed to argue the inference of the senior executive's testimony against HannStar.

A former employee of Hitachi who later served as a Director of LCD Account Development at Toshiba America Electronic Components, Inc., from 2001 to 2006, invoked her Fifth Amendment Right throughout her deposition taken on September 14, 2011. And, a high-ranking executive at AUO asserted his Fifth Amendment Rights throughout his deposition taken on September 29, 2010. He was subsequently tried and convicted and sentenced to three (3) years in federal prison; a conviction which is currently on appeal.

---

[25] Because this motion may not be filed under seal pursuant to the Court's Pretrial Instructions, Plaintiffs, in conformance with to the Protective Order (Dkt. No. 421) have not provided specifics regarding the names of the witnesses who have taken the Fifth Amendment or the areas of questioning on which they asserted their right against self-incrimination. Should Defendants oppose this motion, Plaintiffs will provide that information to the Defendants and the Court in camera, or under any other procedure as the Court may order.

1    Plaintiffs intend to offer these witnesses' refusals to testify and will ask the Court to

2    instruct the jury that they may infer that the testimony would have been adverse to HannStar,

3    Toshiba and AUO, respectively, with respect to whether they participated in a conspiracy to fix

4    prices on TFT-LCD panels.[26]

5        When a witness invokes the Fifth Amendment in a civil case, the trial court has discretion

6    regarding whether an adverse inference is appropriate. *Nationwide Life Ins. Co. v. Richards*, 541

7    F.3d 903, 911 (9th Cir. 2008). "Parties are free to invoke the Fifth Amendment in civil cases, but

8    the court is equally free to draw adverse inferences from their failure of proof." *S.E.C. v. Colello*,

9    139 F.3d 674, 677 (9th Cir. 1998); *see also Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976);

10   *United States v. Solano-Godines*, 120 F.3d 957, 962 (9th Cir. 1997) ("In civil proceedings,

11   however, the Fifth Amendment does not forbid fact finders from drawing adverse inferences

12   against a party who refuses to testify"). A district court has discretion in its response to a party's

13   invocation of the Fifth Amendment. *Wehling v. Columbia Broadcasting Syst.*, 608 F.2d 1084,

14   1089 (5th Cir. 1979); *Sun Microsystems Inc. v. Hynix Semiconductor Inc.*, 622 F. Supp.2d 890,

15   908 (N.D. Cal. 2009) ("to the extent plaintiff has relied on independent evidence establishing that

16   [defendants'] employees . . .had discussions with [other defendants'] employee[s] regarding . . .

17   pricing, an adverse inference is proper" when the defendants' employees assert the Fifth

18   Amendment). Moreover, the relationship between an employee and employer is sufficient to

19   permit adverse inferences against the employer when an employee asserts the Fifth Amendment.

20   *Brinks, Inc. v. New York*, 717 F.2d 700, 710 (2d. Cir. 1983); *RAD Services, Inc. v. Aetna Casualty*

21   *& Surety Co.*, 808 F.2d 271, 275 (3d Cir. 1986).

22       An adverse inference is appropriate if there is a substantial need for the withheld

23   information, if there is no less burdensome way to obtain the facts to which the witness would

24   testify, and if there is independent proof that corroborates the proof of the facts adversely

25   inferred. *Id.* at 912. *see also Doe by & Through Rudy Glanzer v. Glanzer*, 232 F.3d 1258, 1264

26

27   ---
[26] The Court alluded to this possibility in a previous Order. See In re TFT-LCD (Flat Panel)
Antitrust Litig., No. M 07-1827 SI, 2009 WL 4016124 (N.D. Cal. Nov. 9, 2009). The Court later
28   denied a similar Motion in Limine as reflected herein.

---

Plaintiffs' Motions *In Limine* (Nos. 1 - 21)                    Master File No. M07-1827 SI
                                        Individual Files 10-CV-4572; 10-CV-5452; 10-CV-4945; 12-CV-4114
                                                        35

83947821.6

1    (9th Cir. 2000); *Keating v. Office of Thrift Supervision*, 45 F.3d 322, 326 (9th Cir. 1995).  In

2    *LiButti v United States,* 107 F.3d 110, 123-24 (2d Cir. 1997), the Court ruled that a non-party's

3    invocation of the Fifth Amendment can support an adverse inference against a Defendant if such

4    an inference is trustworthy and will advance the search for the truth, considering factors such as:

5    the nature of the party's relationship with the non-party, the degree of the party's control over the

6    non-party, the compatibility of the interests of the party and the non-party, and the role of the

7    non-party in the case.  Cf. *Tableware*, 2007 WL 781960 at *4-*5 (denying defense motion in

8    limine to exclude Fifth Amendment invocations by defendant's executive at trial, subject to a

9    showing of independent corroboration).

10        Plaintiffs are entitled to an adverse inference because they will provide an adequate

11   foundational setting for "the specific grounds upon which [they] request[] an adverse inference,

12   as well as the evidence that independently supports the answers to the questions that the []

13   deponents at issue refused to answer." *Hynix Semiconductor*, 622 F. Supp.2d at 907.  Here,

14   several AUO, HannStar, Hitachi and Toshiba witnesses invoked the Fifth Amendment when

15   questioned at deposition about their communications and agreements with competitors

16   concerning pricing and production of LCD panels.  Documents presented at those depositions

17   independently corroborate that those witnesses made the communications and agreements about

18   which they were questioned on behalf of their respective employers.

19        All conditions necessary to allow adverse inferences are satisfied here.  Those witnesses'

20   answers regarding various topics are important to the Plaintiffs' case and there is no substitute

21   method for obtaining their testimony on that topic.  Hence, given the fact that those witnesses

22   have invoked the Fifth when asked about various topics, the Court may instruct the jury that it

23   may infer that their testimony would be adverse to Defendants on those questions.  An inference

24   in these circumstances is proper.[27]

25

26

27   _____

[27]  Granting this motion will prevent the Defendants from misusing the absent witnesses to further

28   their arguments, as was done in the class trial.

1    In the DPP Class Action, the Court considered a similar motion and pursuant to Order

2  dated 5/4/12 (Dkt. No. 5597, p. 6, No. 27), ruled as follows: "Denied, absent further order of

3  Court."

4  **D.      MOTIONS *IN LIMINE* FILED SEPARATELY ON BEHALF OF PLAINTIFFS.**

5          **22.      Motion for Pre-Trial Ruling on the Admissibility of Documents.**

6      This motion is being filed separately on behalf of Plaintiffs.

7          **23.      Motion for Pre-Trial Ruling on Summary Witness Testimony Reflecting**

8                  **Conspiracy Meetings and Communications.**

9      This motion is being filed separately on behalf of Plaintiffs.

10                              **III.**

11                          **CONCLUSION**

12      For all of the foregoing reasons, Plaintiffs respectfully request that the Court grant their

13  motions *in limine*.

14  Respectfully submitted this 18th day of June, 2013.

15                                      */s/ Roman M. Silberfeld*
                                     Roman M. Silberfeld, Bar No. 62783
16                                   David Martinez, Bar No. 193183
                                     ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
17                                   2049 Century Park East, Suite 3400
                                     Los Angeles, CA 90067-3208
18                                   Telephone:      310-552-0130
                                     Facsimile:      310-229-5800
19                                   Email:       RMSilberfeld@rkmc.com
                                               DMartinez@rkmc.com
20
                                     Laura E. Nelson, Bar No. 231856
21                                   ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
                                     800 LaSalle Avenue
22                                   2800 LaSalle Plaza
                                     Minneapolis, MN 55402
23                                   Telephone:    612-349-8500
                                     Facsimile:    612-339-4181
24                                   Email:       LENelson@rkmc.com

25                                   *Attorneys For Plaintiffs Best Buy Co., Inc.; Best*
26                                   *Buy Purchasing LLC; Best Buy Enterprise*
                                     *Services, Inc.; Best Buy Stores, L.P.;*
27                                   *BESTBUY.COM, L.L.C.;*
                                     *and Magnolia HI-FI, INC*

28

---

*/s/ Janet I. Levine*

Jason C. Murray (CA Bar No. 169806)
Janet I. Levine (CA Bar No. 94255)
CROWELL & MORING LLP
515 South Flower St., 40th Floor
Los Angeles, CA 90071
Telephone: 213-622-4750
Facsimile:  213-622-2690
Email: jmurray@crowell.com
       jlevine@crowell.com

Jeffrey H. Howard (pro hac vice)
Jerome A. Murphy (pro hac vice)
Matthew J. McBurney (pro hac vice)
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C.  20004
Telephone: 202-624-2500
Facsimile: 202-628-5116
Email:  jhoward@crowell.com
        jmurphy@crowell.com
        mmcburney@crowell.com

Kenneth L. Adams (pro hac vice)
R. Bruce Holcomb (pro hac vice)
Christopher T. Leonardo (pro hac vice)
ADAMS HOLCOMB LLP
1875 Eye Street NW
Washington, DC 20006
Telephone: 202-580-8822
Facsimile: 202-580-8821
Email: adams@adamsholcomb.com
       holcomb@adamsholcomb.com
       leonardo@adamsholcomb.com

*Attorneys for Plaintiffs Target Corporation;
Sears, Roebuck & Co; Kmart Corp.; RadioShack
Corp., Old Comp, Inc.; Newegg, Inc., and Good
Guys Inc.*

*/s/ Karl D. Belgum*

Karl D. Belgum (State Bar No. 122752)
John R. Foote (State Bar No. 99674)
Blaire Z. Russell (State Bar No. 271693)
NIXON PEABODY LLP
One Embarcadero Center, 18th Floor
San Francisco, CA 94111-3600
Telephone: (415) 984-8200
Facsimile: (415) 984-8300
Email: kbelgum@nixonpeabody.com
       jfoote@nixonpeabody.com
       brussell@nixonpeabody.com

*Attorneys for Plaintiff Eastman Kodak Company*